|     |     |
| --- | --- |
| 125 | 513 |
| 148 | 398 |

|      |     |
| ---- | --- |
| 125  | 513 |
| c220 | 89  |
| j220 | 96  |

## APPEAL OF H. B. LUFFBERRY, EXECUTOR.

[ESTATE OF JOHN HODGES, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued April 2, 1889—Decided April 15, 1889.

Where a testator directs his executors to sell his real estate and to divide the proceeds among charitable institutions, and, under the act of April 26, 1855, P. L. 332, the bequests to the charities fail by reason of the testator's death within one calendar month after the execution of his will, the power to sell becomes inoperative, and the land remains unconverted and descends to the testator's heirs at law.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ,

No. 158 January Term 1889, Sup. Ct.; court below, No. 201 January Term 1887, O. C.

On February 26, 1887, Henry B. Luffberry, the executor of the will of Maria S. Hodges, presented his petition to the Orphans' Court, averring that he was the residuary legatee of

Maria S. Hodges, deceased; that John Hodges, the husband of Maria S. Hodges, died on January 23, 1882, having first made and published his last will bearing date December 27, 1881, and duly admitted to probate, wherein he gave, devised and bequeathed to his wife all his estate, real and personal, for and during the term of her natural life, and that the fifth clause of his said will was as follows:

" From and after the decease of my said wife, and after payment of the legacies aforementioned, I authorize and empower my executors, hereinafter named, to sell all my estate, real, personal, and mixed, and convert the same into cash, and upon such sale being made, to execute, acknowledge, and deliver unto the purchaser or purchasers thereof, all such deed or deeds or other instruments of writing as will be necessary and requisite to vest in such purchaser or purchasers a good title in fee simple, without such purchaser or purchasers being obliged to see to the application of the purchase money, and the moneys arising from the sales so made, together with the fund realized from the sale of the personal estate, it is my will that my executors hereinafter named shall divide into three equal parts, and I do give, devise, and bequeath the said three equal parts unto the following named institutions, one of said parts unto the Penn Widows' Asylum, located on Belgrade street, in the Eighteenth ward, etc.; another of said parts unto The Home for Aged Couples, located at Perkiomen and Frances streets, in the city of Philadelphia, and the other of said parts unto The Colored Old Man's Home, in the city of Philadelphia."

The petition further averred that there was an equitable conversion of testator's real estate by the provisions of said clause; that the bequests to the charities had failed by reason of the testator dying within one month from the execution of his will; that one third of testator's estate descended and became vested absolutely in Maria S. Hodges, the widow, and the other two thirds thereof in Samuel Hodges, the son of the testator; that the petitioner as the residuary legatee of Maria S. Hodges, was entitled to the residuum of her estate including the share descending to her from her husband's estate: praying for a citation upon Samuel Hodges, administrator d. b. n. c. t. a. of John Hodges, deceased, to show cause why he should not expose the real estate of his testator to public sale.

A citation issued as prayed for, when Samuel Hodges filed an answer in which he averred that the petitioner had no interest whatever in the estate of John Hodges, deceased, and prayed that the petition be dismissed.

The case was heard on petition and answer.

On March 31, 1888, the court entered a decree granting the prayer of the petition and directing the executor to sell. Subsequently the court ordered a re-argument and on July 14, 1888, vacated the former decree and dismissed the petition for reasons stated in the following opinion, HANNA, P. J.:

After a careful consideration of the question involved in this application and to which our attention was not directed at the previous argument, we are led to a conclusion different from that expressed in the opinion heretofore filed. While we think it correct to hold, from the language employed by testator, that he intended a conversion of his real estate, yet, instead of that conversion being for all the purposes of the will, it was to effect a single specific purpose, to wit, a division of the proceeds of sale equally among the three charities. This purpose having failed, by reason of testator's death within thirty days prior to the execution of his will: act of April 26, 1855, P. L. 332, equity now says, there being no occasion nor necessity for a sale of the land, it is as if no conversion had been directed, and the bequest being void, the land shall descend to the heir precisely as if testator had died intestate. Conversion, as is well settled, is an equitable doctrine and founded upon some good and sufficient reason for declaring land to be money, and money land. Where this fails to apply, the doctrine is inapplicable and equity refuses its aid, because it would be unreasonable and consequently inequitable. That is just this case.

Testator devised and bequeathed all his estate to his wife, for life, and directed that after her death his pecuniary legacies be paid. And after payment of the legacies, he authorized his executors to sell all his estate, real and personal, and divide the moneys realized equally among three charitable institutions. He evidently contemplated the pecuniary legacies would be paid out of his personal estate, for he nowhere directs otherwise, nor makes them a charge upon his real estate. If testator had authorized his executors to sell his entire estate, real

and personal, for the payment of his debts and legacies, and divided the balance remaining among the charities, then, as the sale would be for the general purposes of the will, we would agree with petitioner that a conversion must necessarily be held to take place upon the death of testator, and notwithstanding the failure of one of the objects of the conversion, the payment of the charities. Where the property devised is real, and directed to be divided for the general purposes of the will, as for instance, to form with the personalty a common fund for all the purposes of the will, although it should happen that some of them fail, it will be considered an absolute conversion. The new character is definitively and imperatively fixed upon the property, or, in more technical words, it is said to be converted out and out : Brightly's Eq., 346; Burr v. Sim, 1 Wh. 263. But as already observed, the material qualification is, that the conversion is for the general purposes of the will, and not, as in the present case, for one specific object. As Mr. Bispham in his work upon Equity says, at page 290 : " The conversion is limited to the purpose of the donor, and, therefore, in the event of a failure of the purpose, the property will devolve according to its original character."

Where the purpose of the conversion totally fails the rule is quite simple. And even where there is but partial failure of the purposes of the conversion, although the actual conversion takes place, yet so far as respects the proceeds of realty sold, that there is a resulting trust in favor of the heir at law, as against the next of kin, is settled by the leading case of Ackroyd v. Smithson, 1 White and Tudor's Lead. Cas. in Eq., 1171, which, as Mr. Bispham remarks, is " well known for the celebrated argument of Lord ELDON, then Mr. Scott, who was counsel in the case." There the testator gave several pecuniary legacies and ordered his real and personal estate to be sold, his debts and legacies to be paid out of the moneys realized from the sale, and the residue he gave to certain legatees. Two of the residuary legatees died in the lifetime of testator, and it was held that their shares lapsed, and, so far as they were constituted of personal estate, the next of kin were entitled, but so far as they were constituted of real estate, the heir was entitled. And, as said in the note to that case, page 1181 : " It has never since been doubted, that where a testator directs the

real estate to be sold, and the produce of the sale to be applied for a purpose which either wholly or partially fails, the undisposed of beneficial interest will result to his heir at law, and will not go to his next of kin, although the land may have been actually converted into money." Furthermore, on page 1185 we find, where a sale is unnecessary by reason of a total failure of the purposes for which the conversion was directed, the heir will take the estate as realty, descendible to his heir and divisible only by a will attested so as to pass real estate. How applicable to the case before us! The testator directed a sale for a single purpose, and that purpose having wholly failed, there is no necessity for a sale. The presumption is, he intended a conversion for that purpose only, and if it failed, that then the property should pass as if no conversion had been directed.

Much reliance was placed at the argument upon the case of Evans's Appeal, 63 Pa. 183, as showing that not only is there a conversion directed by the will, but that the sale should be made, for the reason that the next of kin are entitled to the proceeds as personalty. But an examination of the case makes it apparent that the only question decided was whether there was an absolute conversion. The court did not decide who were the parties entitled to the moneys to be realized by the sale. In that case, too, the conversion was directed for the general purposes of the will, as READ, J., says, "there are several legacies to be paid as well as debts, and money to be expended in the improvement of the burial lots." In conclusion, we have only to say, that [while there is a conversion directed by testator, yet, as that was for a specific purpose, which has wholly failed, there is now no necessity for a sale, the heir at law being entitled to take the land as land, and the petition must be dismissed.][1]

Petition dismissed, each party to pay his own costs.

The petitioner thereupon took this appeal specifying that the court erred :

1. In the portion of the opinion embraced in [ ][1]

2. In setting aside the former order wherein the administrator c. t. a. was forthwith directed to sell the real estate and to account for the proceeds for distribution.

3. In refusing to direct the administrator c. t. a. to sell the real estate of which John Hodges died seised, for the purposes of distribution.

4. In dismissing the petition.

*Mr. Joseph L. Tull,* for the appellant.

*Mr. Thomas A. Gummey,* for the appellee.

PER CURIAM:

It is very evident, that in authorizing his executors to sell his real estate, the sole purpose of the testator was a division of the proceeds among the three charities named in connection therewith. That purpose having failed by reason of testator's death within one calendar month after execution of his will, the power to sell became unnecessary and inoperative, and the land intended to have been converted into money for the specific purpose above mentioned, descended to his heirs. The subject has been so fully considered and so satisfactorily disposed of by the learned president of the Orphans' Court that the decree is affirmed on his opinion.

> Decree affirmed, and appeal dismissed at the costs of appellant.