# Painter, Appellant, *v.* Painter.

*Will—Conversion—Equitable conversion—Intention of testator—Necessity—Failure of purpose.*

The crucial test in the application of the doctrine of equitable conversion always is whether it is absolutely necessary to carry out the purpose and object of the testator or settlor. If its interposition is a necessity, then it may be invoked with all its legal consequences. Before the rule can operate, however, in the case of a will, the purpose of a testator must be ascertained. Until this is done there is no room for the application of the doctrine. The intent of the testator being ascertained, then so far, and only so far, as there is a necessity to carry that into effect will there be conversion, though an actual sale of the land has taken place. The doctrine is not an inexorable rule of law to control the inheritance of estates, or to defeat the intestate laws of the state which direct the disposition of the estates of the dead. It is not an inheritance law, nor is it a rule, enforcible at law or in equity, by which a court can divert the transmission of real property from the inheritable channel provided by the laws of the commonwealth. It is simply a fiction, a creation of equity, to carry into effect the purpose in the disposition of his real estate which a testator has expressed in his will and which, without its application, would be defeated.

The sole purpose of the doctrine of conversion in the case of a will, being to effectuate the intention of the testator, it cannot be invoked when his intention fails, or is incapable of accomplishment. The reason of the rule then ceases, and the rule itself no longer obtains.

A direction to sell, for a particular object, or with a view of a contingent event, will not work a conversion, if the object cannot be accomplished, or the contingency does not happen, unless the testator plainly intended that the sale should be an end, and not merely a means.

Testator by his will gave a farm to his wife, "she to have the use and occupancy so long as she lives and remains my·widow, then and in either case the farm aforesaid . . . . be sold, and the money arising from said sales of land, together with all the rest, residue and remainder of my estate of whatsoever kind, or nature the same may be, I give and bequeath to my two daughters to be equally divided between them share and share alike. The said sales of land to be made as my daughters, aforesaid, shall see proper." He appointed his wife and one of the daughters executrices of his will. The daughter who was executrix died after her father, intestate, unmarried and without issue, leaving to survive her her mother and sister. The other daughter married and thereafter died intestate and without issue, leaving to survive her her hus-

band and her mother. The latter subsequently died. *Held,* that the will did not convert the real estate into personalty so as to vest it as such in the husband of the deceased daughter, and the next of kin of the widow of the testator, but that the land descended as real estate, under the intestate laws, to the heirs of the testator.

Brown, Potter and Stewart, JJ., dissent.

Argued Oct. 23, 1907. Appeal, No. 179, Oct., T., 1906, by plaintiff, from decree of C. P. Butler Co., Dec. T., 1905, No. 72, dismissing bill in equity in case of Thomas Painter, E. H. Painter, Milton B. Painter, Delilah Duffy and Melvina Gill v. Peter Painter (with notice to J. L. M. Halstead, Miss M. L. Buckley and H. L. Buckley). Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Bill in equity for partition. Before Galbreath, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*H. H. Goucher,* with him *Jacob M. Painter,* for appellants. —The testator here made no devise of the fee of his real estate or devise over. He evidently contemplated his two daughters, Minnie and Helen, living at the death of his widow, and authorized a sale at her death if they could agree and saw proper to make it, as a convenient mode of division of the estate between them. This was the single and only object and purpose for which he authorized a sale. The failure of that object and purpose by the events which have occurred since his death, was not contemplated by him and he failed to provide for them. He did not contemplate, much less intend, that the power of sale should be exercised for any other purpose. There was, therefore, no conversion : Rudy's Est., 185 Pa. 359 ; Filbert's Est., 195 Pa. 295.

Where the result is to change the course of inheritance the law does not favor a conversion, and it will be presumed only so far as is necessary to effectuate the intention of the testator : Hunt's Appeal, 105 Pa. 128 ; Swift's Appeal, 87 Pa. 502 ; Perot's Appeal, 102 Pa. 235 ; Wilkinson v. Buist, 124 Pa. 253 ; Fidler v. Lash, 125 Pa. 87 ; Darlington v. Darlington, 160 Pa. 65.

When the purpose of conversion is attained, conversion ends: Foster's Appeal, 74 Pa. 391–397; Heaberly's Appeal, 191 Pa. 239–248; Rudy's Est., 185 Pa. 359; Henszey v. Gross, 185 Pa. 354; Hunt's Appeal, 105 Pa. 128; Swift's Appeal, 87 Pa. 502; Perot's Appeal, 102 Pa. 235; Wilkinson v. Buist, 124 Pa. 253; Fidler v. Lash, 125 Pa. 87; Darlington v. Darlington, 160 Pa. 65; Worsley's Est., 36 W. N. C. 247.

*W. D. Brandon,* with him *Wm. Z. Murrin* and *John Murrin,* for appellees.—The testator disposed of and intended to dispose of all his estate, real and personal, and died intestate as to none: Cooper's Est., 206 Pa. 628; Darlington v. Darlington, 160 Pa. 65; Vanuxem's Est., 212 Pa. 315.

Where the property devised is real and directed to be divided for the general purposes of the will, as, for instance, to form with personalty a common fund for all the purposes of the will although it should happen that some of them fail, it will be considered an absolute conversion: Burr v. Sim, 1 Whart. 252; Sauerbier's Est., 202 Pa. 187.

Where a sale and conversion is directed by a testator the failure of the purpose and object of sale which will prevent conversion from taking place must occur in the testator's lifetime: Luffberry's App., 125 Pa. 513; McClure's App., 72 Pa. 414.

Opinion by Mr. Justice Mestrezat, January 20, 1908:

This is a bill filed in the court below for the partition of 120 acres of land and the undivided one-seventh interest in another tract of sixty acres situate in Buffalo township, Butler county. George W. Painter died seized of the land on May 22, 1899, leaving to survive him a widow, Mary E., and two daughters, Minnie R. and Helen M., and, as brothers and sisters, the plaintiffs and Peter Painter, the defendant in the bill. By his last will, George W. Painter directed an appraisement and sale of his personal property and the application of the proceeds to his debts and funeral expenses, and then provided as follows: " I give and bequeath to my beloved wife, Mary E. Painter, the farm on which we now reside situate in Buffalo Township, Butler county and state of Pennsylvania, containing one hundred and twenty-two acres less or more. She to have the use and occupancy of said farm so long as she

lives and remains my widow, then and in either case the farm aforesaid and also my undivided one-fourth interest in another farm of sixty acres situate in Buffalo township, Butler county, Pennsylvania, be sold and the money arising from said sales of land, together with all the rest, residue and remainder of my estate of whatsoever kind or nature the same may be I give and bequeath to my two daughters, Minnie R. and Helen M. Painter to be equally divided between them share and share alike. The said sales of land to be made as my daughters, aforesaid, shall see proper. I further direct that my two daughters, Minnie R. and Helen M. Painter shall have a good and comfortable home on my farm on which we now reside so long as they remain single." He appointed his wife and daughter Minnie R. executrices of the will.

Minnie R. Painter died on June 27, 1901, intestate, unmarried and without issue, leaving to survive her her mother and sister. Helen M. Painter married J. L. M. Halstead, and died November 29, 1903, intestate, and without issue, leaving to survive her, her husband, J. L. M. Halstead, and her mother, Mary E. Painter. The latter died June 17, 1905.

This bill was filed by the brothers and sisters of George W. Painter, who claim that on the death of his widow and daughters the land descended to them and their brother Peter Painter, one of the defendants. Halstead, the husband of Helen M. Painter, and the two sisters of Mary E. Painter, the widow, intervened and became defendants in the action, and claim that the will of George W. Painter worked an equitable conversion of the land into personalty; that it vested in his daughters as such; and that on the death of Minnie R., intestate and without issue, her share vested in her mother, Mary E. Painter, absolutely, and at the latter's death, intestate, it vested in her two sisters. Halstead, for the same reason, claims the interest of his wife, Helen M., the other daughter of George W. Painter. The right, therefore, of the plaintiffs to maintain this bill and have the real estate in question partitioned depends upon whether the will of George W. Painter worked an equitable conversion of the land into personalty. If it did, the bill cannot be maintained; if it did not, the real estate descended to the brothers and sisters of George W. Painter, and they have the right to have it partitioned.

The doctrine of equitable conversion is a creature of equity, and is wholly unknown to the law. It is based on the familiar maxim that what ought to be done will be considered or treated as already done. It is now a well-recognized rule of equity jurisprudence, and is in constant application in courts exercising chancery jurisdiction. The master of the rolls states the principle in Fletcher v. Ashburner, 1 Bro. C. C. 497 (1779), a leading case on the subject, as follows (p. 499): "Money directed to be employed in the purchase of land and land directed to be sold and turned into money are to be considered as that species of property into which they are directed to be converted." The rule is operative whether the direction is contained in a will or other instrument of writing. Its sole purpose, however, as declared in text-books and the adjudicated cases, is to effectuate the intention of the testator or parties to the instrument. The crucial test in the application of the doctrine always is, whether it is absolutely necessary to carry out the purpose and object of the testator or settlor. If its interposition is a necessity, then it may be invoked with all its legal consequences. Before the rule can operate, however, in the case of a will, the purpose of the testator must be ascertained. Until this is done there is no room for the application of the doctrine. The intent of the testator being ascertained, then so far, and only so far, as there is a necessity to carry that into effect will there be conversion, though an actual sale of the land has taken place. The doctrine is not an inexorable rule of law to control the inheritance of estates, or to defeat the intestate laws of the state which direct the disposition of the estates of the dead. It is not an inheritance law, nor is it a rule, enforcible at law or in equity, by which a court can divert the transmission of real property from the inheritable channel provided by the laws of the commonwealth. It is simply a fiction, a creation of equity, to carry into effect the purpose in the disposition of his real estate which a testator has expressed in his will, and which, without its application, would be defeated. These principles are well settled and are recognized by the courts in the application of the doctrine.

Mr. Justice SHARSWOOD states the rule with its limitations in Foster's Appeal, 74 Pa. 391. In delivering the opinion of the court he says (p. 397): "Conversion is altogether a doctrine

of equity.  In law it has no being.  It is admitted only for the accomplishment of equitable results.  It may be termed an equitable fiction, and the legal maxim in fictione juris semper subsistit equitas has redoubled force in application to it.  It follows of necessity, that it is limited to its end. . . . There must be some purpose recognized as lawful to be accomplished by a conversion before equity will permit it to have place. . . .  When the purpose of conversion is attained, conversion ends."

In Lorillard v. Coster, 5 Paige Ch. 172, Chancellor Walworth, delivering the opinion of the court, said (p. 218): " Upon the principles of equitable conversion, money directed by the testator to be employed in the purchase of land, or land directed to be sold and turned into money, is, in this court, for all the purposes of the will, considered as that species of property into which it is directed to be converted, so far as the purposes for which such conversion is directed to be made are legal and can be carried into effect."

While the doctrine of equitable conversion is well settled on principle and reason, and is recognized in numerous cases determined by this court, the sphere or limitation of its application is equally well established and should be observed.  The sole purpose of the doctrine, in the case of a will, being to effectuate the intention of the testator, it cannot be invoked when his intention fails or is incapable of accomplishment. The reason of the rule then ceases, and the rule itself no longer obtains.  This principle is as well settled, on reason and authority, as the doctrine of equitable conversion itself.  It is the logical consequence of the doctrine which cannot be applied unless there is an existing purpose of the testator to be carried into effect.  The testator's intention in regard to the disposition of his property, as declared in his will, having failed, an alternative, undisclosed intention cannot take its place, and the doctrine of equitable conversion be invoked to carry it into effect.  The court is not at liberty to surmise what the intention of the testator would have been, and what disposition he would have made of his property if he had anticipated the failure of the disposition which he makes in his will.  He is dead, and no one can speak for him and declare an alternative intent in the disposition of his property.  Any

other purpose than that named in the will is necessarily unknown, and the doctrine of equitable conversion cannot be applied to carry out his unknown intention. Hence the necessity for enforcing the rule, stated by Mr. Scott, afterwards Lord Eldon, in his argument in the leading English case of Ackroyd v. Smithson, 1 Bro. C. C. 503, that the reason of the intention ceasing the intention should be taken to have ceased.

This limitation upon the doctrine of equitable conversion is settled by a uniform current of decisions in this country and in England. In Rudy's Estate, 185 Pa. 359, a life interest in land was given the widow, and at her death the executors were to sell and divide the proceeds of sale equally between his son and daughter, " if they be living, or the issue of such of them as may then be deceased." The son died before the testator, the daughter after the testator but before the life tenant, leaving a husband and two children, one of whom died before the life tenant. It was held that the surviving child of the daughter, subject to the life interests of the widow and father, took the lapsed share as heir, and the residue as sole devisee. In the opinion of the court below in that case, which we adopted, it is said (p. 361) : " But the intention to effect a sale was auxiliary to another and paramount intention—to effect a convenient transmission of testator's property to the devisees. The one intent affected the means, and the other the end, and if, for any reason, the means were useless towards attaining the end, the lesser intent should be discarded. The purpose of a sale, and therefore of a conversion, was that the estate might be divided ; if there was no necessity for a division the purpose fell and the estate remained unconverted."

In Morrow v. Brenizer, 2 Rawle, 185, Mr. Justice Huston, speaking of the admitted limitations or qualifications of the doctrine of equitable conversion, said (p. 193) : " The rule does not apply where the object for which the sale was to be made ceases. The power to sell is then at an end, and lands continue lands. The power to sell ceases when the object ceases. It ceases when the right to the money and the land unite in the same person. It always ceases where one of the devisees dies, so that the legacy lapses ; and so far the heir takes. And where the money to be raised is to go to the heir, the descent is never broken for a moment."

In Nagle's Appeal, 13 Pa. 260, Mr. Justice BELL in delivering the opinion, after giving the rule as stated by Mr. Cox in his note to Cruse v. Barley, 3 P. Wms. 20, that the question of conversion out and out depends on whether the testator meant to give to the produce of real estate the quality of personalty to all intents, or only so far as respected the particular purpose of the will, said (p. 265): " The authorities from which he deduces this doctrine, to be sure, have a relation to lapsed bequests, but I take it, the principle is equally applicable where, from any cause, conversion to meet the exigencies of a will, is prevented."

In Luffberry's Appeal, 125 Pa. 513, the bequest to the charities in the will failed by reason of the testator's death within one calendar month after the execution of the will. For this reason, it was held that the power to sell to pay these bequests became inoperative and the land remained unconverted and descended to the testator's heirs-at-law. In that case, it is said in the opinion of the court below, approved by this court, that " conversion, as is well settled, is an equitable doctrine and founded upon some good and sufficient reason for declaring land to be money and money land. Where this fails to apply, the doctrine is inapplicable and equity refuses its aid because it would be unreasonable and consequently inequitable."

In Lindsay v. Pleasants, 4 Iredell's Equity, 320, Mr. Justice DANIEL, delivering the opinion of the supreme court of North Carolina, said (p. 323): " It is a clear rule in equity, that, where real estate is directed to be converted into personal for any express purpose, which fails, to consider the disappointed interest as realty (although the land has been sold), and resulting to the heir. The rule equally applies to cases where the real proceeds are blended and bequeathed with the personalty (after answering particular objects), and the context of the will affords no manifestation of the testator's intention to convert the real into personal estate, out and out."

And in Wood v. Cone, 7 Paige Ch. 471, Chancellor WALWORTH says (p. 476): " Upon the principles of equitable conversion, the proceeds of the real estate directed by the testator to be sold is only considered as converted into personalty for the purposes of the will. And if any estate or interest in the con-

verted funds was not legally and effectually disposed of by the will, there was a resulting trust, as to such estate or interest, in favor of the heir at law."

Judge HARE in his notes to Ackroyd v. Smithson in 1 White & Tudor's Leading Cases in Equity, 1171, says, after a review of the numerous authorities on the subject : " It may be regarded as well settled, that a direction to sell, for a particular object, or with a view of a contingent event, will not work a conversion, if the object cannot be accomplished, or the contingency does not happen, unless the testator plainly intended that the sale should be an end, and not merely a means."

The supreme court of the United States recognizes the same limitation of the doctrine of equitable conversion. In an elaborate opinion in Craig v. Leslie, 3 Wheaton, 563, Mr. Justice WASHINGTON says (p. 582) : " The whole of this doctrine proceeds upon a principle which is incontrovertible, that where the testator merely directs the real estate to be converted into money, for the purposes directed in his will, so much of the estate, or the money arising from it, as is not effectually disposed of by the will (whether it arise from some omission or defect in the will itself, or from any subsequent accident, which prevents the devise from taking effect), results to the heir at law, as the old use not disposed of."

In England the limitation upon the doctrine is well settled. The leading case is Ackroyd v. Smithson, 1 Bro. C. C. 503, 1 Wh. & T. Lead Cas. in Equity, 1171. The elaborate argument of Mr. Scott, afterwards Lord Eldon, convinced Lord Chancellor Thurlow and firmly settled the doctrine in that jurisdiction, that where a testator directs his real estate to be sold and the proceeds to be applied to a special purpose, which wholly or partially fails, the undisposed of beneficial interest will go to his heir at law and not to his next of kin, although the land may have been actually converted into money. In Ripley v. Waterworth, 7 Ves. Jr. 425 (1852), the court says (p. 435) : " There is an obvious difference from all the cases, which establish this general principle, that where a person dealing with his own property only has directed a conversion for a particular special purpose, or out and out, but the produce to be applied to a particular purpose, when the purpose fails, the intention fails; and this court regards him as not

having directed the conversion." In stating the principle announced in the adjudicated cases in his opinion in Hill v. Cock, 1 Vesey & Beam, 173 (1830), Lord Eldon said (p. 175): "Where a testator means with regard to a particular purpose, to convert his real estate into personal, if that purpose cannot be served, the court will not infer an intention to convert the estate for any other purpose, not expressed." In Taylor v. Taylor, 3 De G. M. & G. 190 (1853), it was held that where one of the beneficiaries died in the lifetime of the testator his share of the proceeds of sale was to be decreed real estate and went to the heir at law. Lord Cranworth, delivering the opinion, said (p. 195): "The rule is established by the cases of Digby v. Legard, 3 P. Wms. 22, n., and Ackroyd v. Smithson, that if a testator disposes of his property, realty and personalty, as a mixed fund, and as to part of it his will cannot take effect, the heir at law will take so much as was the produce of real estate, upon the principle that the heir at law cannot be disinherited without express words." And in 1864 it was determined by the House of Lords in Bective v. Hodgson, 10 H. L. C. 656, that in the application of the principle ruled in Ackroyd v. Smithson it is immaterial whether the conversion directed by the will has or has not actually taken place; that so far as the beneficial purpose fails the real estate or the money, as the case may be, retains its original character for the purpose of ascertaining the ownership of it.

The same rule prevails in New York, and is announced in Read v. Williams, 125 N. Y. 560, 21 Am. St. Rep. 743, where ANDREWS, C. J., speaking for the court, observes (p. 752): "The case falls within the general principle in many cases, that a power of sale in a will, however peremptory in form, if it can be seen that it was inserted in aid of a particular purpose of the testator, or to accomplish his general scheme of distribution, does not operate as a conversion, where the scheme or purpose fails by reason of illegality, lapse or other cause. In that case the property retains its original character, and it goes to the heir or next of kin as real estate or personalty, as the case may be."

The same rule is universally recognized by text writers. Mr. Jarman (1 Jarman on Wills, 6th ed., 589), says: "Every conversion, however absolute in its terms, will be deemed to be

a conversion for the purposes of the will only, unless the testator distinctly indicates an intention that it is, on the failure of those purposes, to prevail as between the persons on whom the law casts the real and personal property of the intestate, namely, the heir and next of kin." Says Mr. Bispham (Eq., sec. 315): " Where the purposes of the conversion have totally failed the property will devolve according to its original character." Mr. Pomeroy (3 Pomeroy's Equity Juris. sec. 1170) says: " Where a conversion . . . . is directed . . . . and the purposes and objects for which such conversion was intended totally fail before the directions for a conversion are carried into effect, the property . . . . will remain in its original condition . . . . and will result in its original unchanged form to the heirs or to the personal representatives of the testator . . . . as the case may be."

It is clear, therefore, that, under all the authorities, when the purpose of the testator, as disclosed by his will, has failed or is incapable of accomplishment the operation of the rule of equitable conversion ceases, the property retains its original character, and goes to the heir or next of kin, as the case may be. It is conceded, as held in Ackroyd v. Smithson, 1 Bro. C. C. 503, and Taylor v. Taylor, 3 De. G. M. & G. 190, that where real estate is directed to be sold and the proceeds to be paid to certain individuals, and one of the beneficiaries dies in the lifetime of the testator, that as to his share a conversion does not take place, and it goes to the heir at law. We are unable to distinguish between such a case, and where the purpose fails subsequent to the death of the testator and prior to the time when the actual conversion can take place. The reason of the rule would clearly extend it to the one case as well as to the other. If the conversion fail, because the purpose of the testator fails and hence cannot be carried out, it logically follows, we think, that there is no conversion if the purpose of the testator fail prior to the time when the actual conversion of the property can take place. The doctrine is a fiction to aid the testator in the accomplishment of his purpose, and when the purpose ceases for any cause and at any time, it necessarily follows that the fiction becomes inoperative and cannot be invoked to accomplish something which cannot be done.

It is clearly not the purpose of the doctrine of equitable conversion to effect results antagonistic to the law in whose realm it has no abiding place. To hold, however, that the doctrine is applicable where the purpose of the testator fails subsequent to his death is to permit it to defeat the intestate laws of the state, and to establish another and different channel for the transmission of estates of intestate decedents. It would strike down the declared policy of the state as embodied in the statute wherein it is provided that no person, who is not of the blood of the ancestor, or other relative from whom any real estate descended, or by whom it was given or devised, shall take any estate of inheritance therein. Such would frequently be the manifest result of applying the doctrine of equitable conversion in cases where the purposes of the testator or settlor had failed at a period subsequent to his death. It would produce such a result in the present case. We cannot assent to give it this effect. The legal consequences of so holding as well as the reason for the rule itself imperatively demand that the application of the doctrine cease whenever the purpose that commands its intervention has ceased.

Our conclusion as to the application of the doctrine of equitable conversion does not impair or defeat the doctrine itself. It simply limits its enforcement to cases where the facts warrant its intervention. If the cause for invoking it in any particular case exists, that is, if its application is necessary to effectuate the intention of the testator or settlor, then it may be invoked. If such cause does exist but has ceased before the actual conversion takes place, then it cannot be applied.

The obvious intent which George W. Painter had in converting his real estate into money after his widow's death was, as expressed in his will, that he might give it to his "two daughters, Minnie R. and Helen M. Painter to be equally divided between them share and share alike." His widow was to retain possession of the land during her life, permitting, however, their two daughters to reside there while single; and for the purpose of making a division between his two daughters after her death he directed the land to be converted, "as my daughters, aforesaid, shall see proper." The necessity for converting it for this purpose entirely failed upon the death of the two daughters prior to their mother's death, when the

actual conversion was to take place by a sale of the land. With the death of his two daughters, the purpose he had in converting the land ceased to exist, and thereafter there was no purpose or intent of George W. Painter with regard to his land which the doctrine of equitable conversion could operate upon. It was still land and whoever took it, took it unconverted and in its original character. Equity will not, under such circumstances, interpose to defeat the intestate laws of the commonwealth and declare that the land shall be considered as personalty so as to vest its title in the next of kin of the widow, who is not of the blood of the party through whom it came.

It may be argued that the construction we put upon the doctrine of equitable conversion will frequently defeat the rights of creditors. Equity, however, never enforces the doctrine for the protection of creditors. It acts solely in the interest of the testator or settlor, to carry out his intention, and can never be invoked for the purpose of placing title to property in anyone in order that his creditors may be benefited. It may be suggested in this connection that it is a well-established rule that a beneficiary may accept the property in its unconverted condition. This may and frequently does prevent the creditor of the beneficiary from enforcing his claim.

It follows from what has been said, that at the death of the survivor of the daughters of George W. Painter, the legatees to whom the proceeds of the real estate were to be distributed, the purpose for which the testator directed the conversion of the real estate ceased, and that thereafter on the death of the widow, who had a life estate therein, it descended as real estate to the heirs of George W. Painter. They, therefore, being the owners of the real estate, have a right to have it partitioned among themselves.

The decree of the court below dismissing the bill is reversed, and the bill is reinstated with a procedendo.

Mr. Justice Stewart, dissenting :

The will in this case contains an imperative and unconditioned direction for the sale of testator's real estate upon the death of the widow, to whom a life estate is given. With nothing to countervail or qualify this positive direction, the

undoubted effect would be a conversion of the real estate into money. The contention is that the direction to sell, though imperative, has regard to a conversion for a limited special purpose, that is to say, for convenience of division and distribution between testator's two daughters, to whom the will gives the entire proceeds of the sale ; that inasmuch as both daughters died without issue, one unmarried, during the widow's life tenancy, a sale is not required for the purpose of the will; in other words, that the direction to sell was but a means to a definite end, and the object failing the incident fell with it.

The doctrine of equitable conversion is undoubtedly subject to the qualification here expressed. Whether the present case falls within the qualification is the determining question here. A conversion directed by a testator is a conversion only for the purposes of the will; when the purpose is limited and special the conversion takes place only so far as it may be consistent with and is related to the purpose indicated. It is universally allowed that when the purpose or object of the conversion fails, the estate remains unconverted to the extent of such failure. But what is meant by failure of purpose or failure of object? Both by text-writers and in the adjudicated cases these terms are used interchangeably, and each may be regarded as the other's equivalent. We can perhaps turn to no authoritative definition of either, yet an examination of the cases will show a fixed and definite meaning which has never been departed from. This much may be safely affirmed, that in every adjudication where failure of purpose or object has been allowed to defeat a positive direction to sell, failure was held to mean failure in the gift itself by lapse or other certain avoidance, the payment of which was the object and purpose of the direction. In no case has the qualification been applied where the gift had become effective by the vesting in the donee. In the leading and initial case of Ackroyd v. Smithson, 1 Bro. C. C. 503, the disposition of money to arise from the sale of the real estate was originally completed, but lapse by the death of two of the residuary legatees in the lifetime of the testator caused the failure of the disposition as to their two shares, which, although actually converted into money, resulted to the heir at law as undisposed real estate. This case established the rule, since invariably followed, in cases

of lapsed gifts.   It was in turn followed by cases where the qualification was applied to defeat the general rule, on the ground that the gift was illegal and therefore failed, as where the gift offended against the rule relating to perpetuities.   It was applied also where the gift failed because it was made to depend on a contingency that never happened ; and to cases where the direction was to sell for the purpose of paying debts which the testator subsequent to the making of his will had himself paid.   These cases define the limits of the qualification as fixed by English authorities, and nothing can be found in our own cases that gives countenance to any wider application.   While the qualifying doctrine has frequently been recognized in our cases, it has rarely happened in Pennsylvania that the qualification has been applied to defeat or avoid a positive direction to sell.   Luffberry's Appeal, 125 Pa. 513, is an instance where it was applied, on the ground that a charitable gift for the payment of which the property directed to be sold was void, because the testator did not survive the statutory period required in such case.   Rudy's Estate, Hudson's Appeal, 185 Pa. 359, is another.   This latter case is supposed to make for appellants' contention ; but an examination will show that it is in no respect a divergence from the rule as we have stated it to be. In that case, following the direction to sell upon the death of the widow, was a gift of the proceeds of the sale to testator's two children, Sarah K. and George W., "if they be living, or the issue of such of them as may be deceased."   George W. died in the lifetime of the testator ; Sarah survived the testator, but died during the life tenancy, leaving a husband and two children.   The husband, as life tenant of the undivided fourth in the realty, petitioned for an order of sale, and a division of the proceeds agreeably to the provisions of the will.   The petition was denied because the admitted purpose of the direction to sell was to effect a convenient division and transmission of testator's property, and inasmuch as the share of George W. had lapsed, he having died in the testator's lifetime, with the result that the entire estate passed to Sarah K. there was an entire failure of purpose, and the conversion was therefore avoided.   The lapsing of the gift to George W. was the determining factor, as is fully indicated in the opinion of the court below, upon which the decree dismissing the petition was

affirmed.    Referring to the fact that the retention of the quality of the estate which the testator intended to transmute into another different quality, may work a radical change in the interests of his beneficiaries, the learned judge says :   " But that consideration can have no weight when we reflect that what has happened was outside of his contemplation altogether. He supposed that more than one  person should share the residue.   How can we, with any show of propriety, speculate upon what, if he had foreseen the actual event, he would or would not have done either by way of preferring the heir on the one hand or the next of kin on the other ?   The share which is in controversy lapsed by operation of law.   Its disposition cannot be referred to an intention of the testator, because he had no intention with regard to it."    The case of Yerkes v. Yerkes, 200 Pa. 419, also relied upon by the appellants, is not in point. The ground upon which the decision there rests is, that the direction to sell was not imperative and peremptory, and consequently did not work a conversion.    Whatever other cases there are in Pennsylvania, where a direction to sell has been avoided because of failure of purpose, it may confidently be affirmed, that upon examination each will be found to rest upon the insufficiency of the will to make effective some particular disposition of all or part of testator's estate.    In the present case there was no failure of the gift, and therefore no failure of purpose, notwithstanding the fact that before actual conversion of the land others had succeeded to the rights of the beneficiaries named in the will.    Immediately upon the death of the testator the gift which was the proceeds of the sale, vested in the two daughters.    It comes to nothing that they never had actual enjoyment of it ; it vested in them, and was theirs to do with as they pleased.    As was said of a similar bequest in Morrow v. Brenizer, 2 Rawle, 185, it vested as money, not by the magic of a fiction, and contrary to the dictates of common sense, but by the express provisions in the will which impressed upon it that particular character.    Here, as there, it requires a fiction to make it anything else.    It is a mere assumption to say that the testator's purpose contemplated nothing but equality of division between his two daughters.    Had they or either of them died leaving issue, it would hardly be pretended that the testator's provision did not have

regard to division among such issue. Neither gift nor the incident of sale was made dependent upon their having issue. Admitting that the purpose of the direction was for distribution of the proceeds of sale, there is nothing in the will that gives support to the theory that no distribution was intended except in the event of the two daughters surviving the period of sale.

It is idle to contend that the decision in the present case does not mark a wide departure from long-established principles. The plain logic of it is, that notwithstanding a testator has directed in unequivocal and unconditional terms that his real estate be sold, that this direction is to be wholly disregarded if by reason of the happening of certain events after testator's death a sale is unnecessary to effectuate a purpose, not expressed in the will, but one which to the judicial mind seems to have been the purpose the testator had in view in directing the sale.

If there be any authority for so conditioning the application of the doctrine of conversion my attention has not been directed to it.

I dissent from the view expressed in the majority opinion in this case.

BROWN and POTTER, JJ., join in the dissent.