ESTATE OF FREDERICK F. DUMONT, EASTON TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1133. Promulgated September 30, 1944.

*David B. Skillman, Esq.*, for the petitioner.
*William D. Harris, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: The petitioner seeks a redetermination of an estate tax deficiency in the amount of $2,338.16.

In computing the net value of decedent's estate for estate tax purposes, petitioner deducted a certain amount from the gross estate as a bequest to Lafayette College, under section 812 (d) of the Internal Revenue Code as amended. Respondent disallowed this deduction. The propriety of that action is the only issue.

The facts have all been stipulated and are so found.

The decedent died June 4, 1939, leaving a last will and testament executed on May 19, 1939. This will was admitted to probate by the Register of Wills of Lancaster County, Pennsylvania, on June 12, 1939. The estate tax return was filed with the collector of internal revenue for the Philadelphia district of Pennsylvania. The date for filing the return was September 4, 1940. The time was duly extended to October 4, 1940, but the return was actually filed on September 28, 1940. The last will of the decedent, as probated, after expressly revoking all earlier wills and making certain specific bequests, contains the following:

The balance of my property, real and personal, I give, devise and bequeath unto the Easton Trust Company, Easton, Pennsylvania, its successors and assigns forever, in Trust—the trust to be known as the WOLFE-DUMONT Trust—for the following purposes and uses:

* * * * * * *

*4th.* To pay to the President of Lafayette College, Easton, Pennsylvania, during his incumbency of that post only, any or all of the balance of net income arising from the beforementioned WOLFE-DUMONT Trust. to be used at his discretion for such purposes as may arise from the needs of the College or students of the College during their periods of residence or study in said College—Jews and Catholics excepted—for such purposes as he may deem fit—the student selected to be American born (United States) for at least two generations on each side—, accounting each year to the Board of Trustees of the said College of the disposition and terms on which he has made use of such income.

An earlier will of the decedent was executed on May 31, 1938. A codicil thereto executed on the same day contained a provision which, except for a survivorship annuity to Ethel Dumont Willits and her husband, Charles C. Willits, was identical with the quoted provision from the 1939 will with respect to Lafayette College.

On September 28, 1940, the president of Lafayette College contested the validity of the 1939 will by appealing from its probate on the ground that the testator lacked testamentary capacity.

On March 8, 1941, the Easton Trust Co., as executor and trustee, the president and trustees of Lafayette College, certain named individuals, *sui juris*, and certain minors, by their guardian and described as being the "next of kin, heirs at law and distributees" of the decedent, but

designated thereafter as "next of kin," entered into a written agreement of assignment containing, *inter alia*, the following preamble:

WHEREAS, the parties hereto include all of the persons in being who are entitled to or claim an interest in the estate of Frederick F. Dumont, deceased, whether under the said last will and testament of said decedent or under the intestate laws of the State of Pennsylvania, excepting the specific legatees named in said will whose interests are not affected by this agreement.

The agreement, *inter alia*, contained the following provisions:

FIRST: In consideration of the withdrawal by the President of Lafayette College of the appeal aforesaid, and of the agreement by the College that no other or further appeal shall be filed from the decree of probate, and in consideration of the payment by the College of the specific sums hereinafter mentioned, the aforesaid next of kin hereby jointly and severally grant, release, convey, sell, assign, transfer and set over unto the President of Lafayette College or the College, as the case may be, all the right, title and interest of said next of kin in and to (1) the balance of income of the residuary trust provided for in said will, remaining after the payment of the annuities therein directed to be paid to Anna Dumont Hansell, Frederick C. Hansell, Ethel Dumont Willits, Charles C. Willits and Victor St. Clair Dumont, and (2) the remainder of said trust, subject to the life estates aforesaid, the intention of the parties being that the last will and testament of Frederick F. Dumont, deceased, as probated on the 12th day of June, 1939, and the intent of the testator as therein evidenced, shall be carried out to the same extent and with the same force and effect as if said will had been executed more than thirty days before the decease of said Frederick F. Dumont.

SECOND: All transfer, succession, inheritance and estate taxes shall be paid out of the residuary estate.

THIRD: The consideration paid and to be paid to the next of kin is as follows:

| | |
|---|---|
| To Victor St. Clair Dumont | $1.00 |
| Anna Dumont Hansell | 1.00 |
| Ethel Dumont Willits | 1.00 |
| John Finley Dumont | 1.00 |
| Wayne Dumont, II | 1.00 |
| Myra G. Dumont Kuypers | 2,222.00 |
| Edward G. Dumont | 2,222.00 |
| George S. Dumont | 2,222.00 |
| Jean Dumont Stearns | 1.00 |
| Harold D. Beatty | 1,111.00 |
| Florence Beatty Phelps | 1,111.00 |
| Gerald E. Beatty | 556.00 |

and in addition, the College will grant him a full scholarship while attending Lafayette College and will refund the tuition already paid for his account.

| | |
|---|---|
| Jane Beatty | 556.00 |

and in addition the College will use its best efforts to obtain for her a full scholarship in any college or normal school which she may wish to attend.

FOURTH: The issuance and service of a citation is hereby waived, and the parties do severally consent that an order of the Court approving this agreement may be entered without notice to any party.

That agreement was filed in the Orphans' Court of Lancaster County, Pennsylvania. When that court made its adjudication on the first and partial account of the executor, the court included therein the following provision: "It is not necessary in view of an agreement entered into by parties in interest to consider the application of Section 6 of the Wills Act of 1917, and its amendments (20 P. S. 195), as to the validity of the charitable residuary remainder."

In the estate tax return the petitioner, under schedule N, deducted as a charitable bequest to Lafayette College the sum of $56,024.93 as representing the then present worth of its interest in the residue of the estate. Respondent disallowed this deduction.

Section 812 (d) of the Internal Revenue Code[1] permits the deduction of "the amount of all bequests, legacies, devises, or transfers * * * to or for the use of * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes * * *." Thus, although Congress undoubtedly meant to favor such gifts, the absolute condition precedent to their deduction is that each be the act of the decedent. *Y. M. C. A.* v. *Davis*, 247 U. S. 47; *Mississippi Valley Trust Co.* v. *Commissioner,* 72 Fed. (2d) 197.

Respondent supports his disallowance of the deduction here on the ground that this deducted residue was acquired by Lafayette College by purchase from the next of kin and heirs at law of the decedent, and not by the act of decedent in the form of a bequest. Petitioner takes the converse position and alternatively argues that the agreement between "the next of kin" and others with Lafayette College was "an irrevocable disclaimer" as a result of which this residue fell into the bequest, legacy, or transfer to Lafayette College, thus bringing the acquisition of the residue within the deduction provided by section 812 of the Internal Revenue Code, as retroactively amended by section 408 of the Revenue Act of 1942, and section 511 of the Revenue Act of 1943.[1] We confine our discussion and decision to the issues thus framed.

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda \* \* \*.

SEC. 408 [REVENUE ACT OF 1942]. DEDUCTION FOR DISCLAIMED LEGACIES PASSING TO CHARITIES.

(a) DEDUCTION IN CASE OF CITIZENS AND RESIDENTS.—The first sentence of section 812 (d) (relating to the deduction for charitable, etc., bequests) is amended by inserting after

The answers depend, as is apparently and properly agreed, upon the status occupied by Lafayette College in acquiring the residue. Similarly, it is conceded that the college took either as a legatee or as a purchaser. Thus petitioner can prevail only if Lafayette College occupied the status of legatee of the decedent in acquiring the residue. *Lyeth* v. *Hoey*, 305 U. S. 188; *Estate of John Sage*, 42 B. T. A. 1304; affd., 122 Fed. (2d) 480; certiorari denied, 314 U. S. 699. This question is divided into two queries. The first is whether Lafayette College was a legatee of the decedent. The second query is, *If the college was a legatee*, did it take the property, under the assignment, as such legatee or as a purchaser? Federal law controls the decision of the second query, but the law of the state having jurisdiction of the will is decisive of the first and here conclusive query. *Lyeth* v. *Hoey, supra*; *Estate of Dudley S. Blossom*, 45 B. T. A. 691.

The decedent here was a resident of Pennsylvania when he died. His last will was probated, contested, and administered in that state. Thus the law of Pennsylvania controls the decision of the question of whether Lafayette College was legatee of the decedent. *Lyeth* v. *Hoey, supra*; *Estate of Dudley S. Blossom, supra*. Certainly the 1939 will did not create that status. That will was executed less than 30 days before decedent's death; the bequest therein to Lafayette College was void—not voidable. Title 20, sec. 195, Purdon's Pennsylvania Statutes, Ann., as amended, 1943.[2] Since the bequest was void "because the statute so declares, and for no other reason" (see *In re Hoffner's Estate, infra*), neither the probate of the will nor distribution thereunder could make the bequest valid. *Moore* v. *Gilbert*, 287 Pa. 102; 134 Atl. 462. A lead-

---

"The amount of all bequests, legacies, devises, or transfers" the following: "(including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return)".

  *   *   *   *   *   *   *

(c) ESTATES WITH RESPECT TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable to estates of decedents dying after February 10, 1939.

SEC. 511 [REVENUE ACT OF 1943]. DEDUCTION FOR DISCLAIMED LEGACIES PASSING TO CHARITIES.

(a) DEDUCTION IN CASE OF CITIZENS AND RESIDENTS.—The first sentence of section 812 (d) (relating to the deduction for charitable, etc., bequests) is amended by inserting after "if the disclaimer is made prior to the date prescribed for the filing of the estate tax return" the following: "or, in the case of a decedent dying on or before October 21, 1942, if the disclaimer is made prior to September 1, 1944."

  *   *   *   *   *   *   *

(c) ESTATES WITH RESPECT TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable to estates of decedents dying after February 10, 1939.

[2] No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will at least thirty days before the decease of the testator, which period shall be so computed as to exclude the first and to include the last day thereof; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. As amended, 1935, July 2, P. L. 573, par. 1; 1939, May 16, P. L. 141, par. 1.

ing case in Pennsylvania, construing the preceding and similar act of 1855, is *In re Arnold's Estate*, 249 Pa. 348; 94 Atl. 1076. The court there said, *inter alia:*

From the earliest interpretation of the statute to the present time, we have uniformly held, as the act declares, that estates devised or bequeathed contrary to its provisions are void. See *Price* v. *Maxwell*, 28 Pa. 23, 39; *Luffberry's App.*, 125 Pa. 513, 515, 17 Atl. 447; *Gray's Est.*, 147 Pa. 67, 23 Atl. 205; *Gregg's Est.*, 213 Pa. 260, 264; 62 Atl. 856; *Carson's Est.*, 241 Pa. 117, 88 Atl. 311; *Hegarty's App.*, 75 Pa. 503, 516. In the last-cited case, Sharswood, J., speaking for the court, said:

The act establishes an unbending rule, fixes an arbitrary period, and enacts that such dispositions of property, whether by deed or will, shall be absolutely void.

In *Lynch* v. *Lynch*, 132 Pa. 422, 426, 19 Atl. 281, Sterrett, J., delivering the opinion, said:

The ultimate limitation to Bishop Wood, for charitable uses, was absolutely void, because the will was executed less than 30 days before testator's death.

In *Gregg's Est.*, 213 Pa. 260, 264, 62 Atl. 856, 857, speaking through our Brother Brown, we said:

It (the act of 1855) must be literally read and strictly construed, if effect is to be given to the legislative intent, and cannot be stretched to save a bequest clearly intended by the act to be void. Charitable or religious institutions claiming bequests or devises must bring themselves within it. As between them and the next of kin of a testator there are no equities, and the rights of each are such only as are given by the statute.

See also *Moore* v. *Gilbert, supra; Estate of Valentine Janson*, 3 B. T. A. 296; *Lancaster Trust Co., Executor*, 3 B. T. A. 298.

Petitioner concedes, on brief, that though the 1939 will was valid the bequest therein to Lafayette College was void. That purported bequest was smaller than the one in the 1938 will by the amount required to meet the survivorship annuity added in the later instrument. Despite this fact, it is argued, however, that if the will contest had succeeded "the College would have probated the 1938 Will and would have argued in proceedings for distribution that the 1939 Will, *despite the clause of revocation*, was only a republication and conformation of the 1938 Will; that it was in effect only a codicil to the 1938 Will, made for the sole purpose of providing an additional life estate; that the actual gift to the College was made in the 1938 Will and was merely confirmed by the 1939 Will to the same extent as tho the Testator had said, 'hereby confirming the provisions in my former Will.'" (Italics supplied.)

But this very contention was met and answered in the case of *In re Hoffner's Estate*, 161 Pa. 331; 29 Atl. 33.[3] In that case it was held that where a legacy for a religious use is void because the will was made "within one calendar month before the decease of testator" (Act of April 26, 1855), the fact that such legacy is *identical* with the codicil to a former will does not make the codicil effective, *even though the*

---

[3] In that case there was a valid bequest to a residuary legatee.

*later will contained no words of revocation.* In so holding, the Supreme Court of Pennsylvania said, *inter alia:*

But, independent of any rule of construction, the act of 1855 does not permit us to seek for a legatee under some former will, made more than a calendar month before death. If the bequest here is invalid, it is because the statute so declares, and for no other reason; if for that reason, then the same statute declares where it shall go,—"to the residuary legatee or devisee."

That is to say, the property covered by such a void bequest passes, not under the will of decedent, but by virtue of the statute which invalidated the bequest "to the residuary legatee or devisee, heirs or next of kin" according to law.[4] Since the bequest to Lafayette College thus fell, the trust of the residue, in so far as it was created to meet that bequest, likewise fell. *In re Conley's Estate,* 197 Pa. 291; 47 Atl. 238. Such residue—the property with the value of which we are here concerned—thus passed "according to law" to the heirs and next of kin of decedent under the intestate laws of Pennsylvania. *In re Knox's Estate,* 328 Pa. 188; 195 Atl. 34.

Nor could the heirs, the next of kin, or the distributees of decedent affect this result by an agreement of disclaimer, renunciation, or otherwise. A case in point is *In re Conrad's Estate,* 341 Pa. 451; 19 Atl. (2d) 379, involving the Pennsylvania inheritance tax. There Anna Conrad died leaving a will in which she gave the income from her residuary estate for life to her sister Rufina and the remainder to certain charities. The court held that, since the will had been made but three days before death, the bequest to charity was void. Realizing this, Rufina attempted to carry out her sister's wishes by executing an irrevocable trust under which she transferred securities of the value of $12,000, the amount estimated to be the value of Anna's residuary estate, to a trustee, the income to be paid to her for life and the remainder to be distributed to the charities. While the securities which she had given the trust were not all the same as were contained in Anna's estate, the court nevertheless said:

Even if it had been the fact that all of the securities used to create the trust were those which Rufina received from her sister's estate, they could have passed to the donees only through her *exercise of dominion* over them. Had she renounced the inheritance, it would have passed, not to the charities, *but to the decedent's next of kin,* or *to the State* by escheat. *In re Arnold's Estate,* supra. [Italics supplied.]

It may be noted here that those who received the substantial part of the consideration paid by the college for the assignment were apparently the heirs and next of kin who would not have shared in the estate under the earlier will and did not under the later will, which was probated. Under either will these heirs and next of kin could have

---

[4] See footnote 2.

taken only in the event of, and under the laws of Pennsylvania applicable to, intestacy. *In re Knox's Estate, supra.*

*Lyeth* v. *Hoey, supra, Estate of John Sage, supra,* and *Charlotte Keller,* 41 B. T. A. 478, are all distinguishable. The *Lyeth* case involved an income tax question. An heir at law compromised a threatened contest of his decedent's will by foregoing his rights as such heir in consideration for which he received money, which respondent had taxed as income to him. The decedent was a resident of Massachusetts. The Supreme Court held that the amount thus received by the heir was not income but was acquired "by inheritance." The fact basing this decision was that, under controlling Massachusetts law, the taxpayer heir occupied *the status of heir of decedent* "which commanded the compromise agreement." In the *Sage* case, *supra,* this Court extended the rationale of the *Lyeth* case to an estate tax question in which the decedent was a resident of New Jersey. As was true in the *Lyeth* case, the will contestant was the widow of decedent and, under New Jersey law, an heir. In the case of *Charlotte Keller, supra,* an income tax question alone was involved. We there extended the rule of the *Lyeth* case to include a legatee under an unprobated will. But we did so in circumstances widely differing from those in this case.

In the *Keller* case both the probated and unprobated wills, with motions to revoke the probate of the former and probate the latter, were before the California court. The law of California was controlling as to who were legatees of the decedent there. Here the earlier and unprobated will was never before the Pennsylvania court. The later will was the only will ever before the court. It was probated. The appeal therefrom was withdrawn and that will was administered—not by chance, but by express agreement. All this happened— and properly so—in Pennsylvania. The laws of that state thus must be determinative, on these facts, as to who were legatees of decedent here.

In the case of *In re Hoffner's Estate, supra,* just as here, a decedent left two wills—both of which contained substantially identical bequests to the same charity. The earlier will had been executed more than 30 days before decedent's death and the charitable bequest was valid. The latter will, which was probated, was executed within less than 30 days of his death and the charitable bequest was, as here, void for that reason. In considering the effect of the earlier will there, in connection with the charitable bequest, the highest court of Pennsylvania said: "But, independent of any rule of construction, the act of 1855 does not permit us to seek for a legatee under some former will made more than a calendar month before death."

It follows, we think, that Lafayette College acquired the residue of decedent's property as a purchaser from the heirs and next of kin of the decedent and not as his legatee.

The alternative contention of the petitioner is that the assignment agreement with Lafayette College constituted "an irrevocable disclaimer" as a result of which this residue fell into the bequest, legacy, or transfer to Lafayette College and that the value of the residue, less the amount paid under that agreement of assignment, was deductible under section 812 of the Internal Revenue Code, as retroactively amended by section 408 of the Revenue Act of 1942 and section 511 of the Revenue Act of 1943.[5] This position is likewise without merit. There was, as we have found, no bequest, legacy, or transfer by the decedent to Lafayette College into which the residual property could fall.[6] But there is another and compelling reason why petitioner fails in this contention. To effect an "irrevocable disclaimer" there must at least have been a repudiation of all their rights as heirs and next of kin of the decedent in the residue. There can be no disclaimer of part of them. Thus no disclaimer can exist where, as here, a consideration was paid and received for them. *Brown* v. *Routzahn*, 63 Fed. (2d) 914; certiorari denied, 290 U. S. 641. Cf. *Estate of John Sage, supra.* See also Treasury regulations and committee report of the Ways and Means Committee of the House in footnote 6, *supra.* The respondent's disallowance of the contested deduction as a charitable bequest is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[5] See footnote 1.

[6] SEC. 81.44 [Regulations 105] (as amended by T. D. 5239, Mar. 10, 1943).—Transfers for public, charitable, religious, etc., uses.—

\*     \*     \*     \*     \*     \*     \*

The amount of the bequest, legacy, devise, or transfer, for which a deduction is allowable under the provisions of this section, includes the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power \* \* \*. A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. Thus, if the beneficiary uses these rights for his own purposes, as by receiving a consideration for his formal disclaimer, he has not refused the rights to which he was entitled. There can be no disclaimer after an acceptance of such rights, expressly or impliedly. \* \* \*

Ways and Means Committee Report, H. R. No. 2333, 77th Cong., 2d sess.:

"SEC. 408. Deduction for Disclaimed Legacies Passing to Charities.

"Under existing law a deduction for a bequest, legacy, devise, or transfer for charitable and related purposes within the meaning of section 812 (d) or 861 (a) (3) of the Code is not allowable to the extent that the decedent empowers another to divert such bequest, legacy, devise, or transfer to another purpose. Moreover, it is not clear whether a deduction of the value of the residuary estate bequeathed or devised for charitable and related purposes includes an amount disclaimed by a specific beneficiary and therefore falling into the residuary estate. In both cases a deduction should be allowed in the full amount passing for charitable and related purposes if the disclaimer of the power or of the specific bequest or devise is prompt. This section therefore amends sections 812 (d) and 861 (a) (3) to assure this result, if there is an irrevocable disclaimer prior to the date prescribed for the filing of the estate tax return. \* \* \* A disclaimer is a complete refusal to accept the rights to which one is entitled. If the beneficiary uses these rights for his own purposes, as by receiving a consideration for his formal disclaimer, he has not refused the rights to which he was entitled. There can be no disclaimer after an acceptance of such rights, expressly or impliedly."

Murdock, *J.*, dissenting: I feel that the principles laid down by the Supreme Court in *Lyeth* v. *Hoey*, 305 U. S. 188, and followed in the *Estate of John Sage*, 42 B. T. A. 1304; affd., 122 Fed. (2d) 480; certiorari denied, 314 U. S. 699, and *Charlotte Keller*, 41 B. T. A. 478, are controlling here, so that the estate is entitled to deduct the net amount which Lafayette College received. The Supreme Court in the *Lyeth* case said: "In exempting from the income tax the value of property acquired by 'bequest, devise, or inheritance,' Congress used comprehensive terms embracing all acquisitions in the devolution of the decedent's estate." Here the question is whether the amount which Lafayette College received represented "bequests, legacies, devises or transfers." There is reason to believe that these latter statutory words were also used comprehensively. Cf. *Estate of John Sage, supra.*

The *Lyeth* case was different from this one in two respects. First, it dealt with an income tax question, whereas the estate tax is involved here; and, second, Lyeth, an heir, was a possible taker by intestacy, whereas Lafayette College was a possible taker under a prior will. But in the *Sage* case the Lyeth principle was applied to an estate tax question similar to the present one, and in the *Keller* case it was applied even though Keller, like Lafayette College, had as her only claim the fact that she was named in a prior will and, unlike Lyeth, was not an heir. In the present case, as in the *Keller* case, a person who would have taken nothing if the later will had been uncontested, contested that will because named in a prior will and acquired a part of the decedent's estate in the settlement, which also allowed the later will to go to probate. In all four of the cases the taker would have lost had the will gone uncontested, but each had a claim to a portion of the decedent's estate in opposition to the contested will which was successfully pressed and settled through an agreement under which each received part of the estate. In all three of these decided cases it was held that property was acquired from the decedent. Here, too, I think Lafayette College took from the decedent, and not by purchase as is held in the majority opinion.

I recognize that the law of Pennsylvania governs the rights of Lafayette College and its acquisition of the property and under that law a bequest to charity based on a will made within thirty days of the death of the testator is void. But I think that Lafayette College acquired something in the devolution of the estate of this decedent. I do not think that any of the Pennsylvania cases cited in the majority opinion lead to a contrary result. In most, if not all, of those cases the court passed upon the validity of a bequest to charity involving a will executed within thirty days of the death of the decedent. Here, Lafayette College was not contending against the Pennsylvania rule and there was never any necessity for a decision as to its applicability.

Lafayette College was contending that the entire 1939 will should be rejected because the testator lacked testamentary capacity at the time he executed it. Lafayette College did not need to rely upon the 1939 will. Its claim was based upon a prior will. Therefore it can not properly be said in this case that Lafayette College was allowed to take under a void bequest. It took under a settlement agreement settling rival claims under two different wills.

A real dispute was settled by all of the parties in interest. The question of whether or not Lafayette College was "out" under the 1939 will or "in" under the 1938 will was never decided. The agreement was that the contest would be discontinued permanently and the residuary estate would go to Lafayette College. The probate court having jurisdiction made an adjudication on an account filed by the executor under which the residuary estate was distributed to Lafayette College. The court in that adjudication expressly stated that consideration of the application of the Pennsylvania law as to the validity of a charitable remainder was not necessary in view of the agreement. Since a distribution was actually made to Lafayette College in administering the estate of this decedent, with the full approval of the court following the settlement of a genuine will contest, it seems incorrect to say that the College took by purchase rather than in a devolution of the decedent's estate.

STERNHAGEN, BLACK, HARRON, and OPPER, *JJ.*, agree with this dissent.