# Arnold's Estate.

*Wills—Charitable bequests—Act of April 26, 1855, Sec. 11, P. L. 328-332—Invalid bequests—Agreement between husband and wife—Post-nuptial agreements—Insufficient evidence.*

1. The provisions of the Act of April 26, 1855, Sec. 11, P. L. 328-332, relating to the attestation and execution of wills containing bequests for charitable uses are mandatory and the courts cannot award to a charity a fund bequeathed to it unless the provisions of the act have been followed. The failure to comply with the provisions of the act renders a disposition to charitable uses void, not merely voidable at the instance of other parties interested in the estate.

2. Where one of the two subscribing witnesses to the will of a testatrix was designated sole executor and guardian of certain legatees, was given legacies in trust for certain friends of the testatrix, legacies for the education of his children and the residue in trust for certain designated charities and such others as the trustee might choose, the witness was not disinterested within the meaning of the Act of April 26, 1855, Sec. 11, P. L. 328-332, and all such charitable bequests were void.

3. A wife who predeceased her husband gave him by will an estate for life and made various bequests including gifts to charities. At the audit of the executor's account it was contended that the husband had waived his rights in his wife's estate by a post-nuptial agreement and therefore had no standing to contest a charitable bequest under the will. There was no express agreement. The facts relied upon from which it was contended that the post-nuptial contract arose were that the husband had expressed a desire to settle up his affairs, which seemed to be in an unsettled condition; that he recognized his wife's inherent right in his estate; that both parties were greatly interested in charities

and that he desired his wife to have the credit and satisfaction of giving as her own, in her own right; that he desired to put his "affairs in order," consulted counsel and began to carry his determination into effect; that both he and his wife made wills, each attesting the other's will, and that in his will of that date he declared that his wife's acceptance of a portion of his property was to be taken as a full release of her dower rights; that he gave her $200,000 in bonds; that she subsequently joined in certain deeds and powers of attorney executed by him; and that testatrix told a witness in her husband's presence that she had decided that they would have a division of his property and she would make a will and dispose of her portion as she chose, and he would make a will and dispose of his portion as he chose, with the understanding that she had made her will. *Held*, the evidence was insufficient to establish a post-nuptial agreement.

4. In such case where it appeared that after the wife's death the husband had become mentally incapable of caring for his property, and a guardian of his estate was appointed, and before the husband or his guardian elected to take against the wife's will the husband died, no election could thereafter be made by the guardian to take against the will.

5. Where in such case the charitable gifts were void, the void dispositions were distributable under the intestate laws; the life interest given the husband under his wife's will merged with the absolute interest in remainder given him under the intestate laws in that part of the estate as to which there was an intestacy, and the husband's personal representatives were entitled to the husband's share.

Argued March 8, 1915. Appeal, No. 77, Oct. T., 1913, by James T. Arnold, Robert J. Cleland, guardian of said James T. Arnold, and Robert J. Cleland, Attorney-in-Fact for said James T. Arnold, from decree of O. C. Allegheny Co., Sept. T., 1912, No. 77, dismissing exceptions to adjudication, in Estate of Isabella Arnold, deceased. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and FRAZER, JJ. Reversed.

Exceptions to adjudication. Before HAWKINS, P. J.

From the record it appeared that James T. Arnold and Isabella, his wife, were residents of the City of Pittsburgh, where the latter died on November 13, 1909.

They never had any children. James T. Arnold, at various times from 1906 to 1908, gave about $200,000 in bonds to his wife. On July 19, 1906, they each executed a will disposing of their respective properties, and each was an attesting witness to the other's will, the other witness being Robert H. Leitch, appointed executor in both wills. In his will Mr. Arnold declares that "having in other ways made full and ample provision for my beloved wife, Isabella Arnold, by turning over to her absolutely a certain portion of my property, I do not by this will give her anything more, as her acceptance of said portion of my property was and is to be taken as a full release of her dower rights under this will." He made specific bequests to certain charities and gave the residuary part of his estate to his three nephews, the Cleland brothers. Mrs. Arnold bequeathed to her husband all the interest and income, during his life, from the money and bonds of which she died seized. Subject to this life estate, she directed the larger part of the principal of her estate to be divided among certain charities and religious uses named in her will. Mr. Arnold was the owner of certain real estate for which he and Mrs. Arnold executed deeds to his nephews, which were deposited in Mr. Arnold's box in the bank but never delivered to the grantees named in the deeds.

On January 4, 1908, Arnold executed powers of attorney authorizing Robert J. Cleland to take possession of his personal property, to collect the income therefrom and the rents of his real estate, in all things to act for Arnold in carrying on his affairs, and to assign all his stock and registered bonds to his nephews. At the same time a declaration of trust was executed by the nephews declaring that the income from the stocks, bonds and other securities assigned was to be paid to Arnold for life. On the same day Mr. Arnold executed another will by which he revoked his former will and devised and bequeathed all his estate to his wife except the real estate he had already given to his nephews. On May 18, 1908,

Arnold, by a further power of attorney, authorized Robert J. Cleland to sell and assign all his securities which he then owned or might thereafter own, and to buy other securities of any corporation, and to have them assigned to Cleland who was to have title to the securities.

Mrs. Arnold executed another will dated May 27, 1909, by which she revoked her former will, bequeathed the interest and income during life from all the money and bonds of which she died possessed, amounting to about $196,000, to her husband, and the principal part of the corpus of her estate to certain designated charities. Robert H. Leitch drew this will, was one of the subscribing witnesses, was named therein as sole executor and as guardian of certain legatees, and was given legacies in trust for certain friends of the testatrix, legacies for the education of his children, and the residue in trust for designated charities and such others as he might choose. Mr. Arnold took no part in the preparation of this will and there is no evidence that he had any knowledge of its contents or execution.

On January 4, 1910, a petition was presented to the Court of Common Pleas of Allegheny County setting forth that Mr. Arnold, owing to weakness of mind, was not able to take care of his property and Robert J. Cleland, his nephew, was appointed guardian for that purpose. On September 14, 1910, the Court of Common Pleas made an order directing Mr. Cleland, as guardian, to elect to take against the will of Mrs. Arnold, and on May 5, 1911, notice to that effect was given Mrs. Arnold's executor. Subsequently, on application to the Common Pleas, its former order directing the guardian to elect to take against the will was in effect revoked by another order which directed him to apply to the Orphans' Court for a preliminary determination of the litigated question as to whether the legacies to charities, contained in Mrs. Arnold's will, were void, so that he could intelligently determine whether it was to the interest of his ward to

take under or against the will, and to take all necessary steps to reserve and preserve to his ward's estate whatever rights might be to its best interest in the distribution of Mrs. Arnold's estate. Pursuant to this authority, the guardian at this audit presented his petition to the Orphans' Court praying that an order be made that he be allowed to elect to take under the will of the decedent if the legacies to religious and charitable bequests were decreed to be void, otherwise to take against her will such share and interest in her personal estate as he would be entitled to under the law, or that if such order could not be made that full and final determination of the question and litigation as to said legacies being void should be made by the court before the petitioner was required to make an election.

On April 4, 1912, the guardian of Mr. Arnold presented his petition to the Orphans' Court and obtained a citation on Robert H. Leitch, executor of Mrs. Arnold, to show cause why he should not be directed not to sell or dispose of the bonds of the decedent's estate, and why he should not file an account as executor. The court directed the executor to file an account, and he thereupon filed this account, being his first and final account, showing a balance for distribution of $172,701.27. Exceptions were filed to the account which were subsequently dismissed, and a decree was entered, January 31, 1913, confirming the account and directing the balance for distribution to be paid to Robert H. Leitch, trustee under the will of the decedent, for the purposes therein specified. Mr. Arnold died on January 28, 1915, since the final decree was entered.

The court dismissed the exceptions. James T. Arnold, Robert J. Cleland, guardian of said James T. Arnold, and Robert J. Cleland, Attorney-in-Fact for said James T. Arnold, appealed.

*Errors assigned* were in dismissing the exceptions.

*D. T. Watson,* with him *William M. Hall,* for appellants.—There was no evidence of a post-nuptial contract between decedent and her husband by which the latter expressly or impliedly waived his rights to take under his wife's will under the Act of May 4, 1855, Sec. 1, P. L. 430.

James T. Arnold's Estate has a legal right to insist that the will is invalid as to the charitable gifts: McLean v. Wade, 41 Pa. 266; Hegarty's App., 75 Pa. 503; Broe v. Boyle, 108 Pa. 76; Gregg's Est., 213 Pa. 260; Reimensnyder v. Gans, 110 Pa. 17.

The will is not witnessed as required by the Act of April 26, 1855, Sec. 11, P. L. 328; the residuary clause is for a charitable use and fails if the specified legacies fall and Mr. Arnold takes under the will as in the case of intestacy: Clement's Est., 150 Pa. 85; Luffberry's App., 125 Pa. 513; Gray's Est., 147 Pa. 67; Gregg's Est., 213 Pa. 260; Irvine's Est., 206 Pa. 1; Hupfeld's Est., 5 Philadelphia 219; Kessler's Est., 221 Pa. 314; Fetterhoff's Est., 228 Pa. 535; Jeanes's Est., 228 Pa. 537; Stinson's Est. (No. 1), 232 Pa. 218; Leech's Est., 236 Pa. 57; Shoemaker's Est., 235 Pa. 402.

*William A. Stone,* of *Stone & Stone,* with him *Louis F. Adelman,* for appellees.—By marriage family settlement between Arnold and his wife, Arnold released his right in her estate and has no standing to object to the legacies in her will: Slater v. Moyer, 245 Pa. 60; Scott's Est., 147 Pa. 102.

There was abundant evidence in support of the finding of the auditing judge that a family settlement took place: Leitch v. Diamond Nat. Bank of Pittsburgh, 234 Pa. 557.

The Act of April 26, 1855, Sec. 11, P. L. 328, does not make charitable bequests void, but voidable only, when the will is not legally executed: Amberson's Est., 204 Pa. 397; Baugh's Est., 12 Pa. D. R. 303.

James T. Arnold and his estate are estopped from claiming against the will because during his lifetime no

such claim has been legally made: Buckland's Est., 239 Pa. 608, 614; Kennedy v. Johnston, 65 Pa. 451; Jackson's App., 126 Pa. 105.

Leitch was a disinterested witness and the will was legally executed: Jordan's Est., 161 Pa. 393; Kessler's Est., 221 Pa. 314; Carson's Est., 244 Pa. 401.

If the charitable bequests fall, they are not distributable under the Act of April 26, 1855, P. L. 328, but under the intestate laws of Pennsylvania: Slater v. Moyer, 245 Pa. 60; Lee's App., 124 Pa. 74; Cunningham's Est., 137 Pa. 621.

*Wm. B. Rogers* filed a paper book for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 10, 1915:

The two important questions in the case are (1) whether the bequests to the charities and religious uses in Mrs. Arnold's will are void under the Act of April 26, 1855, P. L. 328, and (2) whether there was a postnuptial contract by which Mr. Arnold released his marital interest in the estate of which his wife died intestate. The facts of the case appear in the reporter's notes.

It is claimed by the guardian of Mr. Arnold that Robert H. Leitch, a subscribing witness to Mrs. Arnold's will, was not a disinterested witness within the purview of the Act of 1855 and that the bequests to the charities, therefore, failed, and as to them the decedent died intestate, and James T. Arnold, as her husband, is entitled to take the fund under the intestate laws. Mrs. Arnold's executor contends that the Act of 1855 does not make a charitable bequest void, but voidable, that by a post-nuptial or family agreement, having a good consideration, Arnold relinquished all his marital interest in his wife's estate and, therefore, has no standing to contest the legality of the charitable bequests under the Act of 1855. The learned president of the Orphans' Court, the auditing judge, held that there was a valid post-nuptial agreement or family settlement between the

parties by which each relinquished all marital interest in the other's estate, that while Leitch was an interested witness within the Act of 1855, his attestation of the will rendered it voidable and not void, and, as Mr. Arnold, who had no interest in her estate, was the only person setting up the act to defeat the charities, the bequests should be sustained. One of his colleagues concurred with the president judge that there was a valid family settlement, that Arnold released his right in his wife's estate, and that he could not elect to take against her will but must take under it, and concurred in the decree that was entered. He declined to express an opinion as to the disposition of the legacies to charities until the corpus of the estate was before the court for distribution after Mr. Arnold's death. The other judge of the Orphans' Court dissented, holding that Leitch, one of the two subscribing witnesses, was not a disinterested witness within the meaning of the Act of 1855 and the charitable bequests were, therefore, void, and that there was no post-nuptial agreement that if either Arnold or his wife died intestate as to any part of his or her estate the survivor relinquished his or her claim as next of kin under the intestate laws. Arnold, by his guardian and attorney-in-fact, Robert J. Cleland, has taken this appeal.

We are clear that, as conceded by the learned president judge of the Orphans' Court and one of his colleagues, Leitch was not a disinterested witness within the purview of the Act of 1855, and we are also of opinion that by the provisions of that act the charitable bequests in Mrs. Arnold's will are by reason thereof void. Leitch was an interested witness within the act at the time he attested the will: Kessler's Est., 221 Pa. 314, 323; Fetterhoff's Est., 228 Pa. 535; Stinson's Est., 232 Pa. 218; Leech's Est., 236 Pa. 57. We know of no adjudicated case, and have been referred to none, that holds that such bequests are voidable and not void. Section 11 of the Act of April 26, 1855, P. L. 328, provides as follows:

"No estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person, in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and, at the time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary thereto, shall be void and go to the residuary legatee or devisee, next of kin or heirs according to law." Section 15 of the act provides that "all dispositions of property hereafter made to religious, charitable, literary or scientific uses, and all incorporations or associations formed for such objects, shall be taken to have been made and formed under and in subordination to all the duties and requisitions of this act, as rules of property and laws for their government." From the earliest interpretation of the statute to the present time, we have uniformly held, as the act declares, that estates devised or bequeathed contrary to its provisions are void. See Price v. Maxwell, 28 Pa. 23, 39; Luffberry's App., 125 Pa. 513, 515; Gray's Est., 147 Pa. 67; Gregg's Est., 213 Pa. 260, 264; Carson's Est., 241 Pa. 117; Hegarty's App., 75 Pa. 503, 516. In the last cited case SHARSWOOD, J., speaking for the court, said: "The act establishes an unbending rule, fixes an arbitrary period, and enacts that such dispositions of property, whether by deed or will, shall be absolutely void." In Lynch v. Lynch, 132 Pa. 422, 426, STERRETT, J., delivering the opinion, said: "The ultimate limitation to Bishop Wood, for charitable uses, was absolutely void, because the will was executed less than thirty days before testator's death." In Gregg's Est., 213 Pa. 260, 264, speaking through our Brother BROWN, we said: "It (the Act of 1855) must be literally read and strictly construed, if effect is to be given to the legislative intent, and cannot be stretched to save a bequest clearly intended by the act to be void. Charitable or religious institutions claiming bequests or devises must bring themselves within it. As between them and the next of

kin of a testator there are no equities, and the rights of each are such only as are given by the statute." In an attempt to defeat the application of the statute by an estoppel, we said in Reimensnyder v. Gans, 110 Pa. 17, 20: "Everybody is presumed to know that such an obligation falls under the ban of the Act of 1855, and that nothing can be predicated of it. How, then, will the law execute, by way of estoppel, that which the law condemns, and which by a presumption, juris et de jure, it assumes that every one knows to be illegal? This cannot be; the statute is a wholesome one, designed to protect the dying from the craft of priest and layman alike, when they come not to minister comfort and spiritual consolation, but to gather spoil for some favorite charity. We are, therefore, altogether indisposed to detract from its force, or to countenance any evasion of its terms."

The will disclosed the invalidity of the bequests on its face. Large legacies were given to designated charities, and to Mr. Leitch, one of the subscribing witnesses, legacies were given in trust for certain of testatrix's friends, for the education of his children, and the residue in trust for designated charities and such others as he might choose. In Amberson's Est., 204 Pa. 397, we held that the payment of a charitable bequest could not be resisted on the ground that the charitable legatees had not shown affirmatively that the will had been executed in compliance with the Act of 1855, but it was there observed by our Brother POTTER, speaking for the court (p. 400): "Had there been anything upon the face of it to suggest any want of conformity to the act of assembly, the case would be different. If there had been no witnesses, or if upon the face of the will it had been apparent that one or both of them were not disinterested, the fact that the will had been admitted to probate would not, of course, have benefited the claimants of the charitable bequests." It being the duty of the court to distribute the funds in the hands of the accountant to the parties legally entitled thereto, the burden was on the claimants to show that

they were entitled to participate in the distribution. The claimants to the charitable or religious uses were no exception to this rule. They, of course, relied on the testatrix's will to establish their claims on the fund, but the court on examination of the will discovered that as to the charitable bequests it was, on its face, void and, therefore, was wholly without legal efficacy to pass title to the bequests. It was immaterial whether or not any objection was made to the payment of the charities so far as it affected their right to participate in the fund for distribution. The court could only award the fund to the parties legally entitled to it, and the will being void as to the charitable bequests it was the manifest duty of the court to distribute the fund, bequeathed to the charities, as expressly directed by the Act of 1855 "to the residuary legatee, devisee, next of kin or heirs according to law." Mrs. Arnold, therefore, died intestate as to the bequests to charity contained in her will and the fund must be distributed under the intestate laws of the State: Luffberry's App., 125 Pa. 513; Gray's Est., 147 Pa. 67; Kane's Est., 185 Pa. 544, 547; Moore v. Deyo, 212 Pa. 102; Paxson's Est., 221 Pa. 98, 104, and, there being no children, it goes to her husband; Act of April 11, 1848, Sec. 9, P. L. 536.

The Act of 1855 provides that the void legacies shall, in the first place, go to the residuary legatee or devisee, but in the present case the bequest of the residuary estate is void for the same reason as the other charitable bequests and hence the fund cannot pass to the residuary legatee and must necessarily go to the "next of kin or heirs according to law," that is, under the intestate laws.

We cannot agree that there was any post-nuptial contract or family settlement between Arnold and his wife by which Arnold relinquished "all marital interest in his wife's estate," and thereby defeated his right to take any portion of her estate as to which she died intestate by reason of the Act of 1855. It is clear that there is no express agreement, either oral or written, and hence if

there was such a contract, it arises solely by implication: We find nothing in the evidence or in the acts of the parties which would warrant the inference of the existence of such a contract, or that either of the parties intended that the other should not participate in any part of his or her estate which would be distributed under the intestate laws of the Commonwealth. The facts which the majority of the court seem to rely upon to establish the post-nuptial contract are that Arnold expressed a desire to settle up his affairs which seemed to be in an unsettled condition; that he recognized his wife's inherent right in his estate; that both parties were greatly interested in charities; that he desired his wife should have the credit and satisfaction of giving as her own, in her own right; that he desired to put his "affairs in order," consulted counsel, and began to carry his determination into effect. It is also claimed as further evidence of Mr. Arnold's intention to release his interest in his wife's estate, that they made their wills in 1906, each attesting the other's will; that he declared in his will, of that date, that his wife's acceptance of a portion of his property was to be taken as a full release of her dower rights under that will; that she joined in the deeds to his nephews and in the several powers of attorney to his nephew, Robert J. Cleland, by which he put in his hands that part of Arnold's estate which he had not already given to his wife, and that he continued to accept the income on the bonds given his wife.

In further support of the contention that there was a post-nuptial agreement, the testimony of Mr. Leitch and Mrs. Campbell is referred to. The former testified that he was consulted by the Arnolds in 1906 and was told that Arnold and his nephews held stocks and bonds and that each was investing his money in bonds for the other; that the Arnolds agreed that the Cleland boys were to get all the stocks and real estate and she was to get his bonds, and that he had given her $110,000 in bonds on which he was to receive the interest in coupons during

his life, that Leitch was to prepare deeds to the Clelands for the real estate and also wills for both Mr. and Mrs. Arnold, and did prepare them and they were executed July 19, 1906. Mrs. Campbell testified that Mrs. Arnold told her, in her husband's presence, that she had decided that they would have a division of Mr. Arnold's property, and as neither of them had children he was to give her a certain amount and she was to make a will and dispose of her portion as she chose, and he was to make a will and dispose of his portion as he chose, and with that understanding she had made her will.

We have referred to the facts, claimed to be shown by the testimony, which appellee contends sustain the alleged post-nuptial contract, and in view of the settled law as to the evidence required to establish a family settlement, we are unable to see that there is anything in this evidence which establishes an express contract or facts from which a contract may be implied between the parties by which Arnold agreed to relinquish his marital interest in that part of the estate of his wife of which she died intestate. It is true that agreements for the settlement of family disputes are favored in the law and that where there is a contract not to assert any marital rights it will be enforced, but in such cases it must be perfectly clear that the minds of the parties have come together and been in accord upon all the material terms of the agreement. The agreement of compromise should be complete in itself: Wistar's App., 80 Pa. 484, 495. A post-nuptial agreement by which a husband releases all his right as tenant by the curtesy in his wife's real estate does not prevent him under the Act of 1855 electing to take one-third of her personal estate, including the proceeds of her real estate: Rice v. Rice, 2 W. N. C. 672. The contract for the release of a husband's curtesy must show, by its words, that it was clearly intended to have that effect: Spencer's Domestic Relations, Sec. 201; and there must be a consideration: Duffy v. Mechanics' & Tradesmen's Insurance Co., 8 W. & S.

413; Zeok v. Mercantile Trust Co., 194 Pa. 388; Switzer v. Switzer, 67 Va. 574; Stewart on Marriage and Divorce, Sec. 188. "An oral ante-nuptial agreement should not be found," says TRUNKEY, J., delivering the opinion in Hunt's App., 100 Pa. 590, 597, "save upon clear and convincing proof. The burden is upon those who aver it, and they must do more than show a slight preponderance of testimony—they must adduce that which will be satisfactory when considered with the counter testimony, or the proof will be deemed insufficient." There does not appear to have been any consideration moving from Mrs. Arnold to her husband to support a post-nuptial contract. It is true that she joined in the deeds conveying his real estate to his nephews but they were never delivered to the grantees and the title, therefore, remained in Mr. Arnold and her right of dower would have attached had she survived him. She could have refused at any time to have them delivered. The powers of attorney given to his nephews to take possession of his personal property, including his stocks, and account to Mr. Arnold for the income, was no detriment to Mrs. Arnold and could be no consideration moving from her to him for the alleged post-nuptial agreement. She had no interest in the property which would have prevented him from disposing of it at any time he saw fit to do so. He could have sold or disposed of it in any manner he thought proper regardless of her wishes in the matter. We do not agree with the learned auditing judge that the bonds delivered by Mr. Arnold to his wife were the consideration passing between them for the release of her marital interest in her husband's real estate and stocks. We do not think the evidence warranted such a conclusion; on the other hand, it was distinctly ruled in Leitch v. Diamond National Bank of Pittsburgh, 234 Pa. 557, that the bonds were a voluntary gift inter vivos by Arnold to his wife. A gift is a voluntary, immediate and absolute transfer of property without consideration: Lewis's Est., 139 Pa. 640, 642.

The fact that Mr. Arnold desired to get "his affairs in order" and employed counsel to assist in doing so and in preparing the wills for himself and his wife in 1906 has no tendency even to establish a contract on his part waiving his marital rights in his wife's estate after her death. Equally true is it that no such effect can be given to the fact that each attested the other's will executed in 1906. There is nothing in either will indicating an intention on the part of Arnold to waive or release his marital rights in his wife's property if she should predecease him. It can hardly be contended that the declaration in Arnold's will that he had made provision for his wife by turning over to her certain portions of his property which was to be taken as a full release of her dower rights under his will was a release of his rights in her estate. It will be observed that there was no similar declaration in Mrs. Arnold's will declaring that he had released his interest in her estate. Whatever may have been the intention of the parties when they executed the wills of 1906, as to the rights of either to participate in the other's estate after his or her death, the later wills made by the parties were, so far as the evidence discloses, made by them without consulting each other and without each other's knowledge. There is nothing in either of the later wills tending to support the alleged post-nuptial contract. We may properly conclude this branch of the case in the language of the learned dissenting judge of the court below who correctly says: "The inference from this testimony seems to be that it was the intention of Mr. Arnold and his wife, in July, 1906, to make a complete disposition of their property, partly by deed and partly by will; but effect was not given to their intention to dispose of part by the wills of 1906, as they were revoked. It cannot be inferred, however, that there was any intention or agreement between them that if either died intestate as to any part of their estates, that the survivor relinquished his or her claim as next of kin under the intestate laws; and as it is not clear that such

was their intention or agreement, Wister's App., 80 Pa. 484; Spencer's Domestic Relations, Sec. 201; Hunt's App., 100 Pa. 590, the exception to the auditing judge's finding of fact should be sustained."

We need not discuss the question of election to take under or against the will. The guardian could not make an election without the direction of the court empowering him to do so: Kennedy v. Johnson, 65 Pa. 451. We have adverted to the fact that the guardian had in pursuance of instructions by the Court of Common Pleas declined to take under the will, but subsequently the court in effect revoked that order and directed the guardian to await the final determination of the question and litigation as to whether the charitable legacies were void or not before the election was made. The appellee contends that no election was made by the guardian during the lifetime of his ward, and, therefore, no election can now be made by him to take against the will. This is correct: Buckland's Est., 239 Pa. 608, 613; Jackson's App., 126 Pa. 105. At the time this appeal was taken Mr. Arnold was still alive but it appears by the appellee's brief that he died January 28, 1915. The presumption, after his death, is that Mr. Arnold took under the will, and he must be regarded as having done so: Crozier's App., 90 Pa. 384; Jackson's App., 126 Pa. 105, 108; Geist's Est., 193 Pa. 398, 400. It follows that the interest given Mr. Arnold by his wife's will will merge with the absolute interest given him under the intestate laws in that part of the estate as to which there is an intestacy: Kane's Est., 185 Pa. 544; Conley's Est., 197 Pa. 291; Moore v. Deyo, 212 Pa. 102. The part of the estate as to which there is an intestacy, therefore, may be distributed at this time.

The fund for distribution is a balance shown to be in the hands of the executor by his final account. The learned court below entered a decree distributing the fund to the trustee under the decedent's will "for the purposes therein specified." The purposes specified in the

will, and for which the trustee would have taken the fund, were to pay the income for life to Mr. Arnold and to distribute the corpus of the estate among the charitable bequests. The validity of the bequests must, therefore, be considered and determined on this distribution, otherwise the corpus of the estate would, as the decree provides, be distributed to and among the charities named in the decedent's will. The proper time to raise the question of the validity of bequests to charities is on distribution: Carson's Est., 241 Pa. 117, and this as appears by the decree, was done. This, it will be observed, is a final account showing the balance of the decedent's estate for distribution which consists of the corpus of the estate, bequeathed to charitable and religious uses, and the income, bequeathed to Mr. Arnold for life.

There has been no substitution on the record of the personal representative of Mr. Arnold which should be done before the Orphans' Court enters the final decree.

The decree is reversed, and the court below is directed to distribute the fund in the hands of the accountant in accordance with this opinion. Costs of this appeal to be paid out of the decedent's estate.