## Kearns's Estate.

The facts appear from the following extract from the adjudication of

GEST, J., Auditing Judge.—Mr. Knaus, representing all the next of kin (excepting Harry J. Kerns, Jr.), claimed that the devise of the residuary estate for charitable uses was void under section six of the Wills Act. The executor, who is by the will charged with the duty of carrying out the testator's will, is also one of the next of kin and a claimant of one-fifth under the intestate laws; and so, with great propriety, he instructed Mr. Nofer to represent him in his fiduciary capacity, and Mr. Knaus to represent him with the other next of kin, with respect to his personal rights.

The Wills Act of 1917, section 6, provides:

"No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will attested by two credible, and, at the time, disinterested witnesses, at least thirty days before the decease of the testator; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. A disinterested witness, within the meaning of this section, is a witness not interested in such religious or charitable use—this section not being intended to apply to a witness interested in some other devise or bequest in the same instrument."

The will is evidently holographic, and its date appears in the body thereof and at its end, so it may be taken for granted that it was executed more than thirty days before the death of the testator, but Mr. Knaus contended that the provisions of the statute relative to the attestation of the will were not complied with. The will purports to be witnessed by Samuel Barrington and Joseph Marlow, and the attestation paragraph is in the following form, viz.:

"In Witness Whereof, I have hereunto subscribed my name and affixed my seal the First........day of July in the year of our Lord one thousand nine hundred and twenty one.        WILLIAM A. R. KEARNS    (Seal)

"Signed, sealed, published and declared by the testator within named, as and for assurance of his last Will and Testament, in the presence of us, who at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

"SAMUEL BARRINGTON
"JOSEPH MARLOW."

The will, however, was proved before the register of wills by the testimony of two witnesses familiar with the handwriting and signature of the testator, and it was shown by the testimony at the audit that when the testator died in 1930 the most painstaking efforts were made by the late James L. Stanton, Esq., as attorney for the executor, to ascertain the whereabouts of the subscribing witnesses by advertisement in the newspapers and by inquiry of every person who might be supposed to have any knowledge of them. These efforts were unsuccessful, and, consequently, the will was admitted to probate on proof of the testator's signature alone.

Of course, under Carson's Estate, 241 Pa. 117, the probate of the will, as above stated, by the register of wills, does not preclude the next of kin from contesting the validity of the charitable devise, which is a matter of distribution by the court.

Prior to the passage of the Act of April 26, 1855, any person of full age might freely dispose of his estate by will in writing, proved by two or more competent witnesses, not necessarily subscribing or attesting witnesses. Section eleven of the Act of April 26, 1855, P. L. 326, 332, however, provided:

"That no estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or, to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and, at the time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto, shall be void and go to the residuary legatee or devisee, next of kin, or heirs, according to law: Provided, That any disposition of property within said period, bona fide made for a fair valuable consideration, shall not be hereby avoided."

Controversies arose upon the construction of this statute, and it was determined that "attesting" witnesses meant "subscribing" witnesses: Paxson's Estate, 221 Pa. 98. Secondly, it was held in the same volume of reports in Kessler's Estate, 221 Pa. 314, followed in Shoemaker's Estate, 235 Pa. 402, and other cases, that a witness who was interested in any part of the will was not "disinterested" within the meaning of the statute, the attestation of the execution of the whole instrument being what was required by the statute. To remedy this, the legislature passed the Act of June 7, 1911, P. L. 702, which defined a disinterested witness as "being a witness not interested in such religious or charitable use, this act not being intended to apply to a witness interested in some other devise, bequest, or gift in the same instrument."

The provisions of the Act of 1911 were construed in Palethorp's Estate, 24 Dist. R. 215, affirmed in 249 Pa. 389, to the effect that only those charitable devises were held invalid in which the subscribing witnesses were specifically interested, and the Act of 1911 was incorporated in the Wills Act of 1917, section 6, above quoted.

From this resumé of the law it clearly appears that the two subscribing witnesses must be free from interest at the time of the execution of the will in the specific devise to charitable uses which is concerned. Any interest which may subsequently accrue does not disqualify the witness: Historical Society *v*. Kelker, 226 Pa. 16, where the court said: "When the will which they attested was executed they were without any interest in or under the will, and were therefore competent."

The learned counsel for the next of kin argued that under the statute the charitable devise was void, unless attested in accordance with its provisions by two disinterested witnesses, and, therefore, the devisee for charitable uses is obliged to show affirmatively that these provisions were complied with. The only case cited by him was Irvine's Estate, 206 Pa. 1, the facts of which are entirely different from this case, for there the two subscribing witnesses swore before the register of wills that they were not present at the execution of the will, so, of course, the court held that the act was not complied with. In the present case, the signatures of the subscribing witnesses appear under the attestation clause, which states that they were present at the execution of the will, and subscribed their names as witnesses at his request. In Amberson's Estate, 204 Pa. 397, the will contained a devise for charitable uses and was witnessed by two persons, without any attestation clause, who proved it before the register of wills. The court held that the probate of the will was *prima facie* sufficient evidence of its due execution and the charitable devisees were not bound to prove affirmatively anything further at the audit. The Supreme Court, in the later case of Arnold's Estate, 249 Pa. 348, recognized this decision, but held that where a will admitted to probate showed on its face that the statute had not been complied with, the charitable devise was void. I, therefore, hold that, in the present case, the will on its face showing due attestation, there is a presumption that the provisions of the act were complied with, and the burden is on the next of kin to show the contrary. The consequences of the other theory might, in many cases, lead to great injustice. Let us assume, which is probably the case, that this will was properly executed in the presence of two attesting and disinterested witnesses and that ten years elapsed between the dates of its execution and that of the testator's death, during which the witnesses had died, so that it was impossible to prove the will by their testimony, and no one could be found to prove their signatures. Surely the presumption should be followed, arising on the fact of the document and the language of the attestation clause, that the act had been complied with in every respect. And it will be noted that the testator himself states in his will that he was "absolutely free and unbiased, or in any other manner influenced by any party." In the English Wills Act it is provided that "no will shall be valid unless it shall be in writing, and executed in manner herein-after mentioned; (that is to say,) it shall be signed at the foot or end thereof by the testator, or by some other person in his presence and by his direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary."

In Mortimer on Probate Law & Practice, 149, it is said:

"It must always be borne in mind that it is not necessary to have positive affirmative testimony by the attesting witnesses that the requirements of the statute have strictly been complied with. For when a will complete and regular upon the face of it is placed before the Court a presumption *omnia rite*

*esse acta* arises—a presumption, that is to say, that all the requirements of the statute have duly been complied with, and this presumption will prevail in the absence of conclusive evidence to the contrary. Where both attesting witnesses are dead, or the evidence of the attesting witnesses is vague, doubtful, or even conflicting upon some material point, the Court may take into consideration the circumstances of the case and judge from them collectively whether the requirements of the statute were complied with." And, again, on page 152: "When there is a regular attestation clause, with the names of two witnesses appended thereto, leading to the conclusion that the will was executed by a person who knew the requirements of the Wills Act, the principle applies directly; for the Court will assume that no one would have signed his name to the statement contained in such clause unless it were true."

In support of the above there may be cited Leech *v.* Bates, 1 Robertson 714; Burgoyne *v.* Showler, 1 Robertson·5; Lloyd *v.* Roberts, 12 Moore P. C. 158, and Blake *v.* Knight, 3 Curteis 547.

In addition to what has already been said, I regard as important the provision of the act that the attesting witnesses must be disinterested at the time of the execution of the will. Now, the will did not devise the residuary estate to any specified charity, in which a witness might at the time of the execution be interested; the will in effect devised the residuary estate to the executor to be divided by him among charitable institutions. It follows from this, as I think, without a shadow of doubt, that any witnesses to the will must of necessity have been disinterested, and the only remaining requirement of the act is that the witnesses should subscribe the instrument, and this is shown by the will itself.

I have not overlooked the case of Fowler's Appeal, 281 Pa. 459, where the estate was given to the testator's wife for life, with remainder at her death to such charitable institutions as she might designate. In that case, however, the signature of the testator was not attested at all, so that the act was clearly violated, as in Arnold's Estate, 249 Pa. 348. The same remark applies to Phillips's Estate, 1 Dist. R. 311, and Hupfeld's Estate, 5 Phila. 219.

My conclusion is that the residuary estate should be awarded to the executor, to be by him, following the phraseology of the will, divided among such charitable institutions which may stand most in need of assistance and most needed good can be accomplished, and having due regard to the testator's expressed preference for children and the aged and infirm mortals.

*Frederick J. Knaus,* for exceptants; *Harry M. Nofer,* contra.

LAMORELLE, P. J., December 2, 1931.—While the question is novel, interesting and somewhat unusual, it, after all, is extremely narrow and depends upon whether in its peculiar circumstances we should, following the comprehensive discussion by the learned Auditing Judge, apply the rule: *Omnia præsumuntur rite esse acta* (see as to presumption of evidence of probate, cases cited *949 Broom's Legal Maxims). The will, which directed that the residue be sold and the "proceeds to be Divided among Charitable Institutions where most needed good can be accomplished, especially among children, and the aged and infirm mortals," had the usual attesting clause and there were the signatures of two witnesses, necessarily disinterested, because the discretion was with the executor, but neither witness could be located, and the will was proved by identification of the signature of testator. At the audit, collaterals (there being neither wife nor descendants) attacked the will seemingly because the attesting witnesses could not be produced, contending that the

238

burden was with the executor and not on those who claimed that the charitable bequest was void. The learned Auditing Judge thought otherwise and so ruled; hence the exceptions.

Said Lindley, L. J., in Harris v. Knight, 15 Law Reports, Probate Division, 170, in sustaining the ruling of the hearing judge who sustained probate when there were two witnesses as required by the English law, and but one of them could be located: "The maxim, 'Omnia præsumuntur rite esse acta,' is an expression, in a short form, of a reasonable probability, and of the propriety in point of law of acting on such probability. The maxim expresses an inference which may reasonably be drawn when an intention to do some formal act is established; when the evidence is consistent with that intention having been carried into effect in a proper way; but when the actual observance of all due formalities can only be inferred as a matter of probability. The maxim is not wanted where such observance is proved, nor has it any place where such observance is disproved. The maxim only comes into operation where there is no proof one way or the other; but where it is more probable that what was intended to be done was done as it ought to have been done to render it valid; rather than that it was done in some other manner which would defeat the intention proved to exist, and would render what is proved to have been done of no effect." (See pp. 179 and 180; and cases therein cited.)

If in such circumstances probate is allowed, it is but reasonable to apply a similar ruling when a duly probated will is attacked because of the impossibility of producing the attesting witnesses.

All exceptions are dismissed and the adjudication is confirmed absolutely. STEARNE, J., did not sit.