**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**ESTATE of Harry A. ELLIS, Deceased, Helen R. Ellis, Bernard B. Largman and Dan Denenberg, Executors, Respondents.**

No. 12248.

United States Court of Appeals
Third Circuit.

Argued Nov. 21, 1957.

Decided Jan. 31, 1958.

---

2.   Industrial Marine Service v. American Barge Line Co., Inc., 152 F.Supp. 555.

**110**

Marvin W. Weinstein, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Ellis N. Slack, Harry Baum, Attorneys, Department of Justice, Washington, D. C., on the brief), for petitioner.

Herman H. Krekstein, Philadelphia, Pa. (Gerald Krekstein, Merle A. Wolf-son, Philadelphia, Pa., on the brief), for respondent-appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

On this review we are called upon to determine the application of Section 812 (e) (1) (F), and, alternatively, that of Section 812(e) (1) (A) of the Internal Revenue Code of 1939,[1] in respect to federal estate taxes. Ellis, the decedent, a resident of Pennsylvania, died testate on July 30, 1951, survived by his wife, Helen. His will provided in pertinent part, as follows:

"All the rest, residue and remainder of my estate, real and personal, more particularly my interest in the partnership by and between Albert E. Hughes, Jr., and myself, trading as Philadelphia Distributors, I give, devise and bequeath to my trustees hereinafter named, in trust, to hold, invest and reinvest the same, to collect the income, and, after paying all expenses incident to the management of the trust, to pay over the net income to my beloved wife, Helen R. Ellis, for and during the term of her natural life, in monthly installments. I direct that there be paid to my wife not less than the sum of Five Thousand Dollars ($5,-000.00) per annum, and should the income be less than that sum, I direct that the deficiency shall be made up out of the principal of the trust. I further direct that, should my dear wife, Helen R. Ellis, require sum or sums in excess of Five Thousand Dollars ($5,000.00) per annum, that she, and she alone, shall be the judge of how much shall be required and the same shall be paid to her monthly, and should the said sum in excess of Five Thousand Dollars ($5,000.-00) be less [more?] than the income, I direct that the deficiency be applied against the principal of my trust; that upon the death of my wife, this trust shall terminate and I give, devise and

1. Added by 62 Stat. 118 (1948), now Int.Rev.Code of 1954, Section 2056(b) (5), 26 U.S. C.A. § 2056(b) (5).

bequeath one-half the principal, absolutely, unto the estate of my beloved wife, Helen R. Ellis, and the other half unto my dear children, Anita C. Denenberg and Marjorie J. Largman, and their heirs, share and share alike."

The will contained the following spendthrift provision:

"I direct that all legacies and all shares and interests in my Estate, whether principal or income, while in the hands of my Executors or Trustees, shall not be subject to attachment, execution or sequestration, for any debt, contract, obligation or liability of any legatee or beneficiary, and shall not be subject to pledge, assignment, conveyance or anticipation and the personal receipt by such legatee or beneficiary shall be the suffi-

cient and only discharge of my Executors or Trustees."

Mrs. Ellis elected to take under the will and the estate was distributed in accordance with its terms. The Commissioner disallowed the claimed marital deduction, and the Tax Court three judges dissenting, overruled the Commissioner's determination, holding that the bequest qualified for the marital deduction. 26 T.C. 694.

The pertinent provisions of Section 812(e) are set out below.[2]

We will now discuss the theories upon any one of which the taxpayers insist they are entitled to prevail.

■ (1) *The Taxpayers' Contention Under Section 812(e) (1) (F).* The marital deduction provisions according

---

2. Sec. 812. Net Estate.

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \*

"(e) Bequest, etc., to surviving spouse

"(1) Allowance of marital deduction

"(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(B) Life estate or other terminable interest. Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

"(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such

deduction is not disallowed under clauses (i) and (ii))—

"(iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

\* \* \* \* \*

"(F) Trust with power of appointment in surviving spouse. In the case of an interest in property passing from the decedent in trust, if under the terms of the trust his surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

"(i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

"(ii) no part of the interest so passing shall, for the purposes of subparagraph (B) (i), be considered as passing to any person other than the surviving spouse.

This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

to the Report of the Senate Committee on Finance (1948–1 Cum.Bull. 305–06, 332 et seq.) was enacted in order to give to estates of decedents in common law states the same favorable treatment, as nearly as might be effected, as that which is accorded to estates of decedents in community-property states. The marital deduction may be allowed in an amount equal to the value of any interest in property which passes from the decedent to his surviving spouse to a maximum of 50 percentum of the value of the adjusted gross estate, subject to certain limitation. Subparagraph (A) of Section 812(e) (1) sets out the basic rule for the marital deduction which may be an amount equal to the value of any property which passed from the decedent to the surviving spouse to the extent that that interest is included in determining the value of the decedent's gross estate. But subparagraph (B) qualifies the operation of the rule set out in subparagraph (A) because it disallows the marital deduction where, by lapse of time, or on the occurrence of an event or contingency, or on the failure of an event or contingency to take place, the interest going to the surviving spouse will terminate.

If, however, subparagraph (B) be read literally it is obvious that a life estate to the surviving spouse, coupled with a general power of appointment, by deed or will with a devise over in the event of a failure to appoint, would fail to meet the test provided for the marital deduction by the subparagraph. Subparagraph (F) was enacted to provide for the marital deduction when there is such a transfer. Subparagraph (F) creates an exception to the terminable interest provisions of subparagraph (B). This appears from the legislative history of the statute. The Report of the Senate Committee on Finance, *id. supra*, at p. 342 states: "These provisions have the effect of allowing a marital deduction with respect to the value of property transferred in trust by or at the direction of the decedent where the surviving spouse, by reason of her right to the in-

come and a power of appointment, is the virtual owner of the property. This provision is designed to allow marital deduction for such cases where the value of the property over which the surviving spouse has a power of appointment will (if not consumed) be subject to either the estate tax or the gift tax in the case of such surviving spouse."

The Tax Court lays much emphasis, 26 T.C. at page 697, on the portion of the Senate Report last quoted and particularly on its final sentence. The Court also emphasized the provisions of Section 811(f) (2) (3) (A) of the Internal Revenue Code of 1939, relating to the ascertainment of the gross estate, and quoted Treasury Regulations 105, Section 81.24, relating to property subject to power of appointment by the decedent: for example, subparagraph (2): "[I]f a transfer in trust provides that the beneficiary may appropriate or consume the principal of the trust, such power to consume or appropriate is a power of appointment * * *", but also subparagraph (3): "A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard * * * shall not be deemed a general power of appointment * * * [and] A power to consume, invade, or appropriate property for comfort, pleasure, desire, or happiness is not a power limited by an ascertainable standard."

The Tax Court also quoted Treasury Regulations 105, Section 81.47a, relating to bequests to surviving spouse, setting out the five conditions prerequisite to the applicability of subparagraph (F). It is conceded, we believe, that the fourth condition is pertinent to the instant review, that "The power must be exercisable by * * * [the surviving spouse] alone, and in all events.". The third condition is also pertinent. It provides that "The spouse must have the power to appoint the entire corpus free of the trust, exercisable in her own favor or that of her estate * * *."

Ellis's will left the residue of the estate in trust, all income therefrom being

payable to his widow for life. The will granted Mrs. Ellis the power to invade the corpus if she should so "require", "she and she alone to be the [sole] judge of how much shall be required * * *." The Tax Court construed the bequest and interpreted the will as giving Mrs. Ellis an unlimited power to consume the corpus. It also agreed with the respondents that the value of any part of the trust corpus remaining unconsumed at Mrs. Ellis's death would be includible as a part of her estate for the purposes of estate tax, relying largely on the legislative history which we have cited, on Section 811(f) (2) (3) (A), and Treasury Regulations 105, Section 81.24.

Now it will be observed immediately, first, that Mrs. Ellis under the will, as the surviving spouse, was not given the power to appoint the entire corpus free of the trust. Subparagraph (F) of Section 812. She possessed under the will the power to invade corpus but on her death the trust terminated and one-half of the remaining principal, whether or not the corpus was invaded, passed absolutely to her estate and the other half was given outright to the children. It is, of course, true and it is conceded that the power of the surviving spouse must be viewed as of the date of the decedent's death in determining whether it is exercisable "in all events" within the meaning of subparagraph (F). Starrett v. Commissioner of Internal Revenue, 1 Cir., 1955, 223 F.2d 163, 166. It is therefore apparent that if Mrs. Ellis did not consume the whole of the estate, one-half of the residual corpus would go to the children. If she had the "unlimited power to invade" referred to in Treasury Regulations 105, Section 81.47a, we would hold that the residuary estate, by the terms of subparagraph (F) and the provisions of the Treasury Regulation cited, would be entitled to the benefit of the marital deduction. We come then to the issue as to what was the exact nature of the power given Mrs. Ellis over the residuary estate during her lifetime.

The law of Pennsylvania must be applied to determine what was the nature of the power Mrs. Ellis possessed. Morgan v. Commissioner, 1939, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035; Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Brodrick v. Gore, 10 Cir., 1955, 224 F.2d 892. We think that there can be no doubt that under that law the power to "consume" the corpus of the estate for herself was one to be exercised by her "in good faith", In re Rumsey's Estate, 1926, 287 Pa. 448, 451, 135 A. 119, 120 and "honestly and fairly", Zumbro v. Zumbro, 1918, 69 Pa.Super. 600, 603. The courts of Pennsylvania have demonstrated watchfulness to make sure that the donee of a power does not exercise it to deplete the estate "for the mere purpose of defeating the testator's intention or of preferring certain heirs or beneficiaries." Zumbro v. Zumbro, supra, 69 Pa.Super. at page 603. In Degenkolv v. Daube, 1941, 143 Pa.Super. 579, 586, 18 A.2d 464, 467, the Superior Court of Pennsylvania said that "under general principles of a life tenant, with power to consume, may not give the property away * * * [T]he plain effect of the gift in the present case would be to defeat the clear intent of the testator. * * *" In Re Tyson's Estate, 1899, 191 Pa. 218, 226, 43 A. 131, 133, the Supreme Court of Pennsylvania stated: "The extent of the widow's consumption of the estate was within her own control. Her decision was without appeal, but it must have been honestly reached in accordance with the purpose the testator intended, and not merely colorable to defeat his will. She had power to carry out his intentions by sale, transfer, and consumption of the proceeds in such a way as to leave nothing at her death. But a transfer with intent not to consume for herself, but to preserve for others after her death, and to change the beneficiaries after her [death] from those chosen by her husband to others of her own selection, would be a fraud on the testator and his will." It seems clear that Mrs. Ellis under the terms of the will did not possess an "unlimited" power to invade the corpus or appoint the corpus to herself as

unqualified owner. Under the circumstances we are of the opinion that Mrs. Ellis's life interest coupled with her power to consume the corpus could not enlarge her estate into one equivalent to a fee simple. The decedent had named remaindermen to take one-half of the unconsumed corpus at her death and left her the other half for the benefit of her estate. Chesnut v. Chesnut, 1930, 300 Pa. 146, 151 A. 339, 75 A.L.R. 66. It therefore seems clear that the whole of the residuary estate cannot qualify for the marital deduction under the provisions of subparagraph (F) for she did not possess the power to appoint the corpus by will or during her life and "in all events." Cf. Estate of Pipe v. Commissioner, 2 Cir., 1957, 241 F.2d 210.

In so stating we are not unmindful of the legislative history of the marital deduction and the purpose for which it was enacted. But it appears that Congress looked to an absolute ownership of the surviving spouse in a community-property state as the test and that anything less should not be granted the deduction unless it comes squarely within a strict construction of subparagraph (F).

2(a) *The Taxpayers' Contention Under Section 812(e) (1) (A).* (a) The taxpayers' first contention under this heading is that at least one-half of the value of the residual bequests qualifies for the marital deduction under Section 812(e) (1) (A) of the Internal Revenue Code of 1939. The Tax Court did not pass upon this contention for under its disposition of the case this was unnecessary.

█ Under this point we must deal with the spendthrift provision of the trust, quoted above. The Pennsylvania courts have held that generally where a life interest in trust and a remainder interest in fee unite in a single person the interest will merge into a resulting

absolute interest in fee in the holder of the several estates. In re Conley's Estate, 1900, 197 Pa. 291, 47 A. 238; Sharpless' Estate, 1892, 151 Pa. 214, 255 A. 44.

We believe that this is true even where a partial life interest meets a remainder, or a partial remainder, meets a life interest. In re Arnold's Estate, 1915, 249 Pa. 348, 94 A. 1076, and In re Conley's Estate, supra. The taxpayers contend that if it were not for the spendthrift clause of the will there could be no question as to the absolute nature of Mrs. Ellis's interest in one-half of the residuary bequest and that even where there is a spendthrift provision in a trust there can be a merger of two estates into an absolute fee if it was not the intent of the testator to preserve or shield the wife from her improvidence or incompetence by the spendthrift provisions. We cannot agree. The Pennsylvania courts jealously uphold spendthrift trusts and see to it that the will of the testator is given effect as he expressed it. In re Bosler's Estate, 1954, 378 Pa. 333, 107 A.2d 443, 444. In the cited case the Supreme Court of Pennsylvania stated categorically that "A life estate under a spendthrift trust will not coalesce or merge with an estate in remainder," citing In re Moser's Estate, 1921, 270 Pa. 217, 113 A. 199.

█ (b) *The Taxpayers' Contention under the General Application of Section 812.* The taxpayers' next contention is that the marital deduction is allowable under the general rule of Section 812 to the extent of one-half of the value of the trust created as an "estate trust".[3] The petitioner contends that since on Mrs. Ellis's death a portion of the trust, one-half of the corpus remaining unconsumed will pass to the children, Mrs. Ellis's interest is a terminable one. In this the petitioner is in error. A terminable interest is defined in subsection

3. The term "estate trust" is used to distinguish a trust qualifying under Section 812(e) (1) (A) from a power of appointment trust under Section 812(e) (1)

(F). See Casner, Estate Planning Under the Revenue Act of 1948—The Regulations, 63 Harv.L.Rev. 99 (1949).

(B) as one which will terminate or fail upon the lapse of time, or on the occurrence of an event or a contingency, or on the failure of an event or contingency to occur. A marital deduction will be denied if (1) there is a terminable interest, and (2) if any other party shares in that terminable interest with the surviving spouse. Thus, although for the disallowance of the marital deduction there must be a sharing of the terminable interest,[4] it cannot be said properly that because the widow shares an interest in the whole corpus of a trust that this alone can make a severable non-terminable interest terminable.[5] Mrs. Ellis is the recipient of the entire income of the trust for life, and upon her death the trust is to terminate and one-half of the unconsumed principal of the trust will go to her estate. Mrs. Ellis's interest is therefore unconditional, it cannot fail upon the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur.

The petitioner's interpretation of the statute would require us to treat the residuary estate as a single unit, the whole of it terminable for tax purposes. Actually as we have said only one-half of it is terminable, assuming that some portion of it will remain unconsumed. It follows that the provisions of Section 812(e) (1) (B) apply only to that portion of the residuary estate which is terminable, the part going to the children. The value of the remaining half which will go to Mrs. Ellis' estate constitutes a valid marital deduction.

4. Even a terminable interest may be the subject of a marital deduction if the termination of the terminable interest eliminates the existence of the property itself; for example, an annuity, a copyright, or a patent. See Casner, supra, note 4 at p. 440.

5. S.Rept. No. 1013, Part 2, 80th Cong., 2d Sess. 336 (1948) states:
"On the other hand, subparagraph (B) does not apply merely because another person has an interest in property in which the surviving spouse has an interest. There is no need to apply such

The decision of the Tax Court will be vacated and the cause remanded to the end that the amount, if any, due to the taxpayers may be determined by the Tax Court in view of our decision.

subparagraph unless the interest passing to the surviving spouse is a terminable interest. Thus, if the decedent by his will devised Blackacre to X for life with the remainder to his surviving spouse, subparagraph (B) is not applicable inasmuch as the interest passing to the surviving spouse is not a terminable interest. *Similarly, if the decedent by his will devises Blackacre to his wife and son as tenants in common, the marital deduction is allowed, since the surviving spouse's interest is not a terminable interest.*" (Italics supplied.)