## Ranck Estate

*Harold Winston Spencer, George C. Corson, Jr., Wright, Spencer, Manning & Sagendorph* and *John F. Kennedy,* for accountant.

*Kirke Bryan,* p. p., guardian ad litem.

TAXIS, P. J., February 7, 1964.—The account presently before the court was filed because of the death of Josephine Ranck Lanigan, life tenant, which event occurred on January 17, 1960. By reason of her death the remainder vests in William Neale Lanigan, Jr., her son, to remain in trust until he reaches 21 years whereupon the remainder rests in him free of trust. William Neale Lanigan, Jr., is now 19 years of age.

There is raised for determination by this court a complex and difficult problem arising by virtue of a tax deficiency against the Josephine Ranck Lanigan

estate resulting mainly from including the corpus of the Joseph A. Ranck estate in the Josephine R. Lanigan estate.

Joseph A. Ranck, decedent, died on January 11, 1951, and created the trust now before the court by his will dated May 13, 1938, and two codicils thereto. In article fourth thereof, he appointed Montgomery National Bank of Norristown, Pennsylvania, and his widow, Emma H. Ranck, "and the survivor," as his trustees.

In article sixth, he gave Mrs. Ranck and his daughter, Josephine Lanigan, successive life estates. At Mrs. Lanigan's death, which occurred on January 17, 1960, the trust was to be divided into as many shares as she had children, and be distributed to them as they attained the age of 21. There are also provisions for distribution to the issue of any such child who should die during minority.

Mrs. Lanigan had one child, William Neale Lanigan, Jr., who survived her but who is not yet 21. In article eighth, testator made further provisions for contingent beneficiaries should his daughter die without issue.

Article seventh creates the general problem now before the court and provides as follows:

"My trustees may distribute and pay out portions of the principal hereof to or for the use or benefit of my wife, or my daughter after the death of my wife, at such times, in such amounts, and for such purposes as my said trustees in their unrestricted discretion may deem advisable."

Emma H. Ranck did not survive her husband, and Montgomery National Bank became sole trustee after his death, under the provisions of article fourth. In 1952, Josephine Lanigan petitioned this court seeking to have herself named as cotrustee of this trust. See Ranck Estate, 69 Montg. 117, 3 Fiduc. Rep. 203

(1953). Her petition was dismissed by President Judge Holland, who regarded the language of article fourth as expressive of a testamentary intent that no replacement should be appointed if Emma H. Ranck ceased or was unable to serve.

The matter again came before the court in 1954, shortly after Montgomery National Bank merged with and became known as The Philadelphia National Bank. Upon being notified of this development, Mrs. Lanigan presented another petition, requesting the appointment of the then Montgomery Norristown Bank and Trust Company and herself as substituted trustees. The court, through Judge Van Roden, specially presiding, granted the petition since The Banking Code of May 15, 1933, P. L. 624, sec. 1410, 7 PS §819-1410, provides for the appointment of substituted fiduciaries in the event of the merger or consolidation of an existing corporate fiduciary. The court also held that, as the substituted fiduciary had agreed to serve in conjunction with Mrs. Lanigan, she could also be appointed, the outgoing trustee having no further standing to object to her appointment.

This decision was affirmed by the Supreme Court, at 381 Pa. 332 (1955), because all of the matters in issue were found to be within the sound discretion of the hearing judge. The Supreme Court specifically rejected the contention of The Philadelphia National Bank that Mrs. Lanigan's appointment was unwise and improper because of her potential conflicting interests as trustee and as beneficiary, pointing out that any action regarding the invasion of corpus, under the provisions of article seventh of the will, could only be taken by the joint action of both trustees.

Upon the audit of the Federal estate tax return filed in the Estate of Josephine R. Lanigan, deceased, the United States Internal Revenue Service ruled that the value of the residuary trust in the Ranck Estate was

taxable in the Lanigan Estate. This position was based on the holding that Mrs. Lanigan owned, at her death, a general power of appointment within the meaning of that term under section 2041 of the Internal Revenue Code, August 16, 1954, C. 736, 68A Stat. 385, 26 U. S. C. A. §2041. There was thus created an alleged tax deficiency in the Lanigan Estate of about $106,000, plus interest. As the distributable estate of Josephine R. Lanigan, deceased, is less than $27,000, her executor, on July 11, 1963, filed a claim against the Estate of Joseph A. Ranck, deceased, formally requesting that the sum of $85,000 be set aside to insure payment of the tax and/or reimbursement of the Lanigan Estate as may ultimately be found proper, after determination of the various issues involved. In addition it was requested that this court award to the Estate of Josephine R. Lanigan, deceased, such share of any Federal estate tax delinquency, plus interest, as may be found to be due after proper assessment from the Ranck Estate.

By letter of April 25, 1963, counsel for the Ranck Estate notified regional counsel of the internal revenue service that this account had been filed and was before this court for adjudication. The latter also informed said counsel that this court would be requested to determine the nature of the property interest possessed by Josephine R. Lanigan at her death, under applicable Pennsylvania law. At the audit of this account on May 13, 1963, the United States Government was represented by Sidney Salkin, Esq., who did not, however, enter a formal appearance. The position of the government in the matter appears to be that, although this court may decide the nature and extent of Mrs. Lanigan's property interest under state law, the audit of a fiduciary's account is not a permissible or appropriate occasion to do so. In this connection the government has filed a memorandum of law entitled

"Brief Amicus Curiæ," and the estate has also filed a memorandum concerning the problem of jurisdiction.

Clearly, this court has jurisdiction to determine whether or not a fund should be set aside in an estate to secure the payment of Federal estate taxes or to reimburse another fiduciary or estate which may initially be required to pay such taxes. Nor can there be any doubt of its jurisdiction to adjudicate the substantive aspects of such a claim for reimbursement when it arises: Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, sec. 5, as amended, 20 PS §885. The problem here, however, is whether or not this court, as part of the adjudication of this account, has jurisdiction to determine the substantive nature of the rights in the instant trust possessed by Mrs. Lanigan.

The initial objection of the United States Government is as to form. It is asserted that there are no pleadings, no issues framed, and no testimony or evidence. It is further contended that the United States Government is not a creditor or otherwise a formal party in interest in this estate, and therefore the entire proceeding threatens to foreclose the adversary litigation of the matters in question. From this the conclusion is drawn that there is here requested not the disposition of a real or impending controversy, but rather a mere advisory opinion, in order to prevent the administrative determination of the same points by the internal revenue service.

The orphans' court is one of equity, and should subordinate form to substance to achieve a correct result: Webb Estate, 391 Pa. 584 (1958). As to separate pleadings, this record is complete without them, as a detailed petition for adjudication has been filed, and clearly sets forth the issues. As to evidence, there is no factual dispute. And as to the right of the federal government to appear and be heard formally, little more can be said beyond observing that its position is

crystal clear from the arguments of Mr. Salkin and from his excellent brief. Had the government petitioned to intervene in the matter, such a request would surely have been granted, and it is well within the power of this court to regard the record as satisfactory, where a fair result so requires.

It is trite to restate that this court has jurisdiction of all problems of administration and distribution of testamentary trusts: Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 301(2). It is equally clear that this includes the power to construe and interpret the language of the governing instrument, and in general to determine all problems of law touching such trusts. A question concerning the rights possessed by a fiduciary or beneficiary in trust property is precisely within this jurisdiction, and there is considerable doubt as to what other court in this Commonwealth could render a decision on such a question, if this court refused to do so.

The Federal courts, themselves, have long held that the laws of the respective states determine the legal interests which an individual has in estate property: Commissioner of Internal Revenue v. Ellis' Estate, 252 F. 2d 109 (1958). In addition, a state court determination of these interests, even if nonadversary at the time of its rendering, must be given effect by the federal court in subsequent determinations of tax liability: Darlington's Estate v. Commissioner of Internal Revenue, 302 F. 2d 693 (1962). These holdings, of course, are not a requirement that such issues must be determined *only* by a state court. In tax cases properly before a Federal court, there is no lack of competency to determine what the state law is or what it should be. But it would be folly to hold, as here in effect contended by the government, that a state court does not have jurisdiction to determine matters of state law, simply because such determination may ulti-

mately affect federal tax liability. This court has neither the desire nor the ability to interfere with the administrative routine of auditing federal estate tax returns. In the Lanigan Estate, the return will still be reviewed by the appellate division of the internal revenue service, and then, presumably, by the tax court or the district court. The final determination of tax liability under the applicable provisions of the Internal Revenue Code will remain just where it is now.

This is sufficient answer, in our opinion, to the contention of the government that any decision in this case will preempt or invade an area of federal jurisdiction, and will interfere with the proper operation of the administrative process before it has been completed. Cases relating to the impropriety of judicial interference with the administrative routines of such agencies as the public utility commission before their administrative processes are complete [e.g., Midland Borough v. Steubenville etc. Traction Co., 300 Pa. 134 (1930) ], are obviously inapplicable where, as here, the court decree can have no effect whatever on subsequent actions of the administrative agency.

We turn, therefore, to a consideration of the property rights owned by Mrs. Lanigan. In its brief, the estate has divided this probelm into several subordinate issues, presumably because counsel have determined that each such issue may become germane to an ultimate determination of estate tax liability. We will consider the issues raised, without necessarily holding that they are all which might have been raised.

The first issue raised is whether the power to invade principal contained in article seventh of the will was exercisable by Mrs. Lanigan as trustee. The estate contends it was not, first because testator did not confer such power directly upon substituted trustees, and also because any exercise by her of such power would

be unconstitutional as violative of the vested property rights of the remainderman.

As to the first contention, the language in the will is clear. The decedent's "trustees" had the power to pay out principal, and it would be a severe distortion of this plain language to hold that substituted trustees, otherwise possessing all of the powers and duties of the original trustees, did not have this single one, because it was not specifically given them. Besides, section 947 of the Fiduciaries Act of April 18, 1949, P. L. 512, dealing with substituted trustees, confers upon them all the power of their predecessors, except as otherwise clearly provided in the trust instrument.

As to the argument regarding unconstitutionality, the leading decision in Catherwood Trust, 405 Pa. 61 (1961), shows that vested rights in property are not quantitative in any way. The remainderman, William Neale Lanigan, Jr., was given his interest subject to the possibility that his grandmother or his mother would consume portions of principal; he was guaranteed nothing except the right to have whatever might be left. The exercise of this power to consume, by whomsoever, does not change in the slightest the precise nature of the estate owned by William Neale Lanigan, Jr.

The above discussion, however, does not exhaust the matter. It would be, perhaps, legitimate grammatically to term the action of either trustee, when both agreed that principal should be invaded, an "exercise" of the power. The important issue, however, is not how to term each individual's action, but whether or not the power was, in a genuine sense, exercisable by *Mrs. Lanigan*. Manifestly, the plain meaning of testator's words is that the power may be used only by the joint decision of both trustees, and it is misleading to regard either of them individually as capable of any significant action. It seems clear, therefore, that the power

in question was not exercisable by Mrs. Lanigan, nor for that matter by the corporate trustee, but only by both trustees acting in agreement.

The next issue raised by the estate relates to whether or not the power in question, regardless of who or under what circumstances it may be exercised, is a general power of appointment. Under the law of this Commonwealth, a general power of appointment may be defined as the legal right to dispose of property owned, titled or possessed by another without restriction as to the identity of the appointee or appointees: Lyon v. Alexander, 304 Pa. 288 (1931). Such powers may or may not be restricted in their exercise to deed or to will, yet are termed general, if unrestricted as to beneficiary. This alone indicates that the instant power is not general but special, being restricted in bounty to two persons only, decedent's wife and daughter.

Further, even though a general power of appointment may be coupled to a life estate, such does not create absolute ownership in its donee: Davis Estate, 22 D. & C. 2d 755 (1960), and cases cited therein. It has long been settled that what the owner of the power might have done does not inure to the benefit of his estate or his heirs, or even his creditors, if in fact he did not exercise the power: Rumsey's Estate, 287 Pa. 448 (1926). This latter rule is especially clear where, as here, the creator of the power of appointment made complete provision for the alternative disposal of his estate, should the power be wholly or partly unexercised. The inescapable conclusion, therefore, is that Mrs. Lanigan's interest, howsoever it might be technically characterized, is not a general power of appointment.

The third problem presented is whether the power in question is limited, legally, by any ascertainable standard of application. The language of the testator, considered alone, gives to his trustees "unrestricted dis-

cretion" to pay out principal. There is no reference to the often found standards of care, support or need, or even to the benefit or comfort of the beneficiaries.

There were, however, extensive provisions in the will for the benefit of decedent's grandson, the direct remainderman, and further ones in the event of his failure to survive decedent, in which case other persons obtained contingent interests in the fund. It was, therefore, clearly contemplated by the testator that his wife and daughter would leave a substantial estate unconsumed.

In addition, testator entrusted his estate to a corporate trustee, which would under no circumstances have any direct interest in the ultimate disposition of his estate, except to pursue his intentions as earnestly as possible. If the power at hand were absolute, a corporate trustee, being without the guiding element of self-interest, would possess no standard whatever under which it might deviate from its strong duty to preserve the corpus for the remainderman.

When Mrs. Lanigan became a trustee, she too was entrusted with a similar duty to preserve the corpus. Keeping in mind, as before discussed, that we are here dealing with only a right to consume principal and not a general power of appointment, it is plain that both trustees, as fiduciaries, regardless of their individual status otherwise, owed this duty to William Neale Lanigan, Jr. The result of this dual role on the part of one of the trustees is that they were bound to exercise their power to pay out principal within the limits of a sound and reasonable discretion, and not, as inferred from the position of the United States herein, regardless of the remainder interests.

This result comports with the intention of the testator as gathered from article fourth of his will, wherein he creates the instant trust ". . . to be used for the use and benefit . . ." of the parties interested therein.

It seems clear that he intended to create as broad a power to meet his survivors' needs as he could; but to construe his language, under the present circumstances, as an absolute right to consume principal without any regard for other interets would be unwarranted.

Two appellate court cases are significant. In Johnson Estate, 359 Pa. 645 (1948), the trustee was decedent's widow, and had the power to use ". . . so much of the principal of said estate as in her judgment it may be wise to use for the benefit of herself during her natural life and for the benefit of our children. . . ." The Supreme Court held that decedent did not intend the trustee to have an absolute fee, and that she could not dispose of trust property during her lifetime without showing a direct and immediate benefit to herself or the children.

In O'Brien Estate, 381 Pa. 322 (1955), the trustee had the power to transfer absolutely " '. . . to any one or more of testatrix's brothers at any time any part or all of the corpus of the trust property.' " Reading testatrix's will as a whole, the court discerned an intention on her part that this power be restricted to the support and maintenance of the said brothers, reasoning chiefly from the fact that such language was used by her elsewhere in the will. The same rationale was followed in Rumsey's Estate, supra, where it was held that a widow with an unlimited power to consume principal nevertheless could not take for herself any of the principal other than to consume it, in the accurate sense of the word. In short, as said therein at page 452, "The widow's consumption of the estate must be in good faith for the purposes authorized in the will."

We have here, then, an expression of testamentary intent by Joseph A. Ranck that the consumption of principal be limited to the "use and benefit" of the beneficiaries. There are, in addition, substantial pro-

visions for the disposition of unconsumed principal. Under such circumstances, the federal courts themselves, in Commissioner v. Estate of Ellis, supra, have recognized that there exists thereby a definite, ascertainable standard for the exercise of any power to consume. Therefore, any invasion of corpus in this estate would, of necessity, have to be based upon a determination that such action was proper for the care, support and maintenance of the life tenant, or to meet some similarly important need. Under Pennsylvania law, this is an ascertainable standard, and has been passed upon by our courts on innumerable occasions. See Rumsey's Estate, supra.

The matter becomes even more certain in the light of Mrs. Lanigan's dual capacity herein. The only issue here for adjudication is whether her use of the power to pay out principal was limited by an ascertainable standard; we are not deciding whether another beneficiary, unencumbered by any fiduciary duty, might have had a more absolute right than did Mrs. Lanigan.

Leaving aside the pragmatically important fact that she never attempted to bring about any payment to herself of principal, it nonetheless appears that her self-interest had to be heavily diluted by the necessity of being loyal to the remainder interests. Any action on her part to impair or reduce those interests could not be justified by other than her personal need, or items representing her care, maintenance or support. I therefore hold that the power of the trustees in the estate of Joseph A. Ranck, to pay out of principal, was restricted to situations involving the need, or care, maintenance or support of the life tenant.

Therefore, as it appears that a possible federal estate tax liability exists in the estate of Joseph A. Ranck, deceased, the claim on behalf of the estate of Josephine R. Lanigan, deceased, that $85,000 be set aside to insure the payment thereof, or reimbursement

therefor, is granted. In addition, there is hereby awarded to the estate of Josephine R. Lanigan, deceased, any share of federal estate tax liability, together with interest thereon, which may properly be found to be due after proper assessment and payment thereof.

The account is confirmed, and it is ordered and decreed that Montgomery County Bank and Trust Company, surviving substituted trustee, as aforesaid, forthwith pay the distributions herein awarded.

*Order*

And now, February 7, 1964, this adjudication is confirmed nisi.